Hat, Judge,
delivered the opinion of the court:
The plaintiff entered into a written contract with the-United States on December 5, 1918, whereby it agreed to construct a light machine and electrical shop in the navy yard, Brooklyn, New York, together with hot and cold water, sewer system, plumbing, etc., for which the United. States agreed to pay the plaintiff the sum of $760,375; and on January 11, 1919, a supplemental agreement was entered, into by the parties in which the plaintiff agreed to make-certain alterations and additions to said building for which, the United States agreed to pay the sum of $18,473.
It was agreed that the building should be completed within 210 days from the date of the delivery of the contract to the plaintiff. A copy of the contract was delivered toil on January 6,1919, and the work was not completed until January 20, 1920. The plaintiff has been paid in full the-sums fixed in the contracts.
The plaintiff at the time the final payment was made executed a qualified release of its claims, except those which, are the subject of this suit.
The plaintiff is now claiming that it should be paid the-sum of $38,663.72, which sum is made up of 11 different, items.
The contract provides as follows:
‘ The Government reserves the right to make such changes' in the contract, plans, and specifications as may be deemed necessary or advisable, and the contractor agrees to proceed, with such changes as directed in writing by the Chief of <he Bureau of Yards and Docks. The cost of said changes; shall be estimated by the officer in charge, and, if less than $500, shall be ascertained by him. If the cost of said changes is $500 or more, as estimated by the officer in charge,, the same shall be ascertained by a board of not less than three officers or other representatives of the Government.. The cost of the changes as ascertained above, when approved by the Chief of the Bureau of Yards and Docks, shall be-added to or deducted from the contract price, and the contractor agrees and consents that the contract price thus increased or decreased shall be accepted in full satisfaction for all work done under the contract: Provided, That the-increased cost shall be the estimated actual cost to the contractor at the time of such estimate and that the decreased. *561 cost shall be the actual or market value at the time the contract was made, both plus a profit of 10 per cent.”
Of the 11 items, 6 of them were passed upon by the board provided for in the contract, and the decision of the board was approved by the Chief of the Bureau of Yards and Nocks. In five of these cases the plaintiff accepted the money allowed by the board; in the other case a certain amount was deducted from the purchase price by the decision of the board, and this decision was approved by the Chief of the Bureau of Yards and Docks. These six items 50 passed upon by the board were the items set out in Bindings IV, Y, VIII, IX, X.
This court has repeatedly held that when the parties to a •contract agree that the decision of an officer shall be final the court will not set aside such a decision unless the decision is fraudulent or so grossly erroneous that fraud will be implied. There is no evidence in this case of fraud, nor does it appear that the decision of the board as to these items was grossly erroneous, or erroneous at all. The plaintiff having agreed and consented that the contract price should be added to or deducted from the contract price in accordance with the decision of the board, and having agreed to accept the price so fixed in full satisfaction for all work done under the contract, and having been paid and having accepted said sum so fixed, it is bound by its contract and is not entitled to relief here. It is not necessary to cite authorities m support of this rule of law. They are too numerous and too well known.
As to the item of cold-water, paint (Finding X). In this case a dispute arose as to the meaning of the specifications. The contract provides as follows:
“ The specifications and plans forming part of the contract shall be considered as supplementary one to the other, so that materials and workmanship indicated, called for, or necessarily implied by the one and not by the other shall be supplied and worked into place the same as though specifically called for by both. Should any discrepancy be found to exist between plans and specifications or any parts of *562 either, or should the language of any part of the contract prove to be ambiguous or doubtful, the officer in charge will, decide as to the true intent and meaning.”
The officer in charge made his decision, and the plaintiff, is bound by it.
As to the item of painting interior steel (Finding XI) we think the plaintiff is not entitled to recover. The plaintiff by its operations made it necessary to have the painting done, and it can not be held that it should be paid for its own negligence.
The next item is for excess wages and extended overhead (Finding XIV). The plaintiff bases its claim for recovery upon the theory that the Government is liable in damages to the amount of $14,989.16 by reason of the delays which it claims were caused bjr the United States, and for which the Government was responsible. As a matter of fact the Government was not responsible for all the delays which are claimed by the plaintiff. The contract provides how the plaintiff should proceed to obtain additional compensation for increased wages. The contract provides as follows:
“ If, after the date of the contract there shall be any increase in the rates of wages prevailing in the vicinity of a place where work contemplated by the contract is done,, that shall necessitate payment by the contractor, on account of labor employed exclusively upon such work, of rates of wages in excess of those prevailing in such vicinity at the date of the contract, he shall receive additional compensation in a sum equal to one-half the amount of the increase in the rates of wages so required to be paid by him over the rates prevailing at the date of the contract: Provided, That in determining such additional compensation wages paid by the contractor at any time during the continuance of the contract in excess of the rates prevailing in the vicinity at the time of such payment shall be disregarded to the extent of such excess: And provided further, That any increase over wage rates prevailing at the date of the contract before being granted by the contractor shall be notified to and approved in writing by the Bureau of Yards and Docks. For the purposes of this paragraph rates of wages prevailing in the vicinity of a place where work contemplated by the contract is done shall be understood to mean the established *563 rates of wages in the nearest navy yard or station if there be one within 50 miles of such place, or, if there be none within that distance, the rates of wages paid under a well-established wage scale, if any, in such vicinity, or, if there be none, such reasonable rates of wages as may be determined by the Navy Department, Bureau of Yards and Docks. The burden shall be upon the contractor of establishing to the complete satisfaction of the Bureau of Yards and Docks all facts upon which any claim for additional compensation hereunder shall rest, and all questions growing out of any such claims shall be determined by the Navy Department, Bureau of Yards and Docks, whose decision thereof shall be final and conclusive. Determination of such claims shall be deferred until the completion of the contract.”
The plaintiff failed to submit its claims for excess wages in accordance with the provisions of the contract; and having failed to do so, and having failed to pursue the remedy provided for it in the contract, is estopped from asking for relief here.
The item of $1,679.83, which the defendant does not contest, is allowed.
It is also admitted that the board made an error of $146.96 in its computation of allowances in making its finding as to the amount due the plaintiff for turntables, switches, and monorails (Finding XII), but the court can not revise the decision of the board in this case. If it did so, it would follow that it could and would exercise revisory powers over all the findings of the board and thus nullify the provisions of the contract.
The court has allowed the plaintiff the sum of $670.63 for the two items of power wiring and pump foundations and the amount of $1,679.83 above referred to in Finding V, a total of $2,350.46. Judgment will be entered for that amount, and the petition will be dismissed as to all the other items of the plaintiff’s claim.
It is so ordered.
Moss, Judge; Graham, Judge; Booth, Judge; and Campbell, Chief Justice, concur.