GEORGIA HARDWOOD LUMBER CO. v.
UNITED STATES.
No. 48557.

Court of Claims.
June 28, 1948.

E. E. Blakely, of Washington, D. C., for plaintiff.

Grover C. Sherrod, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief · Justice, and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

JONES, Chief Justice.

Plaintiff sues for damages alleged to have been caused by the cancellation of a lumber shipping contract occasioned by the requisition by the Government of the use of the three vessels on which the lumber was to be shipped.

Plaintiff alleges that in the early part of 1942 it contracted with Lykes Brothers Steamship Company for freight room on the S.S. Liberator for shipment of 100,000 feet of lumber; on the S.S. Nemaha for shipment of 150,000 feet of lumber, and on the S. S. James McKay of 100,000 feet of lumber, each of such shipments to move from New Orleans, Louisiana, to points in the Union of South Africa; that the lumber had been manufactured for the Government of the Union of South Africa in accordance with specifications contained in a firm contract of sale, and that in accordance with said bookings the lumber was shipped to arrive at the Port of New Orleans on or before the scheduled shipping dates.

Under date of March 4, 1942, the War Shipping Administration, later merged with the Maritime Commission, sent the Lykes company a telegram with respect to the S. S. Liberator, asking for the use of the vessel by charter for a period of one year, and advising Lykes that if satisfactory arrangements could not be made within ten days the vessel would be requisitioned.

On the same date Lykes in turn notified the plaintiff by letter that due to the fact that the S. S. Liberator had been requisitioned it would be impossible to fulfill the contract for lumber shipment and that such contract was being cancelled.

On February 28, 1942, the War Shipping Administration sent a similar telegram to Lykes in respect to the S. S. Nemaha, and on March 9, 1942, a similar telegram in reference to the S. S. James McKay, and in each case on the same date Lykes notified plaintiff that the lumber shipment contract would be cancelled because of such requisition.

The plaintiff further alleges that at all times during such period the Lykes Brothers Steamship Company was acting as agent of the defendant by virtue of certain agency agreements; that plaintiff, however, knew these facts and recognized that the shipping space which it had contracted for in such vessels was being taken by the defendant for public use; that with such knowledge plaintiff commenced immediately to unload, store, reroute and remove all lumber from the docks so that the defendant could have full, complete and unimpeded possession of the vessels and docks; that plaintiff kept strict account of all the extra expense it had been put to and submitted a bill to the defendant on September 12, 1942, in the amount of $3,754.91, plus interest at 6 percent; that payment was denied by the defendant on the ground that Section 902 of the Merchant Marine Act of 1936, 46 U.S.C.A. § 1242, provides that the owner of a vessel shall not be paid for any consequential damages arising due to the taking or using of any property under this section. The plaintiff filed a timely claim with the Maritime Commission for the payment of such expense under Section 17 of the Contract Settlement Act of 1944, 41 U.S.C.A. §§ 101–125. The Maritime Commission denied the claim. The plaintiff appealed under the provisions of the Contract Settlement Act to the Appeal Board Office of Contract Settlement. The claim was again denied.

The defendant demurs to the petition on the ground that it fails to state a cause of action.

The question is whether the defendant by requisitioning the use of the vessels and thus causing plaintiffs' shipping contracts to be cancelled became liable to the plaintiff for the damages caused by such cancellation. We think not.

The amount of the extra costs to which plaintiff was put by virtue of such cancellations is not in dispute. We will assume that these items of damages were introduced as proof of the value of plaintiff's contract. On no other basis could they be considered under the facts of this case.

In the light of a long line of decisions it seems rather clear that plaintiff's claim does not fall within the class of cases under which defendant could be held liable. There was no privity of contract between plaintiff and defendant, and since the defendant did not directly take the contract, it falls within the group of cases where the damages are held to be consequential. It comes within the definition of what is called frustration rather than taking. In the case of Omnia Commercial Co. v. United States, 261 U.S. 502, 43 S.Ct. 437, 439, 67 L.Ed. 773, the plaintiff had entered into a contract with the Allegheny Steel Company whereby the latter was to deliver to it a large quantity of ship plate and tank plate for a fixed consideration. Based upon its contract with the Allegheny Steel Company the plaintiff had contracted to sell certain of these products to another company at a definite profit. Before deliveries were made, however, the United States Government requisitioned the entire output of the Allegheny Steel Company, thus preventing it from complying with its contract with the plaintiff in that case. The plaintiff sued the defendant alleging a taking of its contract. In sustaining defendant's demurrer in that case the Supreme Court used the following language: "The government took over during the war railroads, steel mills, shipyards, telephone and telegraph lines, the capacity output of factories and other producing activities. If appellant's contention is sound, the government thereby took and became liable to pay for an appalling number of existing contracts for future service or delivery, the performance of which its action made impossible. This is inadmissible. Frustration and appropriation are essentially different things."

In the case of Louisville & Nashville R. R. Co. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 271, 55 L.Ed. 297, 34 L.R.A.,N.S., 671, it was held that an act of Congress prohibiting the issuance of free transportation by interstate common carriers which invalidated a contract for transportation previously entered into and valid when made, did not have the effect of taking private property without compensation. The court said: "It is not determinative of the present question that the commerce act, as now construed, will render the contract of no value for the purposes for which it was made. In Legal Tender Cases [Knox v. Lee, 12 Wall. 457, 20 L.Ed. 287], above cited, the court, referring to the 5th Amendment, which forbids the taking of private property for public use without just compensation or due process of law, said: 'That provision has always been understood as referring only to a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power. It has never been supposed to have any bearing upon or to inhibit laws that indirectly work harm and loss to individuals. A new tariff, an embargo, a draft, or a war, may inevitably bring upon individuals great losses; may, indeed, render valuable property almost valueless. They may destroy the worth of contracts.'"

It may be added that in the complicated business set up of this country there are many interwoven contracts. Sometimes contracts, plans and commitments are made many months ahead in many lines of business. When the Government in the exercise of its sovereign or war powers finds it necessary to take action many of these are interfered with and much expense and frustration results and the complications become almost endless. Naturally the line must be drawn somewhere. That line has been rather clearly drawn by the Supreme Court between the direct taking and consequential damages.

 Accepting for the purposes of demurrer the allegations of plaintiff's petition as pleaded, there was not a taking by the defendant of the property of plaintiff,

and while apparently there is no question as to the out-of-pocket expenses caused by the action of the defendant, they fall within the definition of consequential damages as laid down by the courts of the country. Horowitz v. United States, 267 U.S. 458, 45 S. Ct. 344, 69 L.Ed. 736; Froemming Bros., Inc., of Texas v. United States, 70 F.Supp. 126, 108 Ct.Cl. 193.

The demurrer is sustained and the petition dismissed.

HOWELL, MADDEN, WHITAKER and LITTLETON, Judges, concur.