**J. B. McCRARY CO., Inc. v. UNITED STATES.**
**No. 17849.**

United States Court of Claims.
June 6, 1949.

O. R. McGuire, Washington, D. C. (Ivy Lee Buchanan, Washington, D. C., on the brief), for plaintiff.

Frank J. Keating, Washington, D. C., H. G. Morison, Asst. Atty. Gen. (Donald B. MacGuineas, Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge and WHITAKER, HOWELL, MADDEN and LITTLETON, Judges.

WHITAKER, Judge.

On January 26, 1943, plaintiff entered into a contract with defendant for the construction of 65 buildings at a place called Warner-Robins, Georgia, which was about 15 miles from Macon, Georgia. The contract required plaintiff to pay its brick-masons $1.25 an hour, its carpenters $1.00 an hour, and common labor 40 cents an hour. Plaintiff was unable to get sufficient labor at these wages and as a result thereof was delayed in the performance of its contract for 186 days. Defendant was also late in furnishing roughing-in drawings for the plumbing, and in failing to deliver promptly plumbing and heating equipment, which it was required to furnish under the contract. As a result of these delays plaintiff incurred excess costs in the performance of its contract. On a careful review of all the evidence, we have determined that these excess costs amounted to $72,289.-66.

A bill was introduced and passed by the 79th Congress providing for the payment to plaintiff of a sum to compensate it for its excess costs as a result of these delays, but this bill was vetoed by the President on the ground that plaintiff had a right of action in the Court of Claims and that it had failed to pursue its remedy therein. Afterwards, another bill was introduced to provide for the payment of the same amount to plaintiff; this bill was referred to this court by Senate Resolution No. 122. This resolution read:

Resolved, that the bill (S. 708) entitled "A Bill for the relief of the J. B. McCrary Company, Incorporated," now pending in the Senate, together with all accompanying papers, is hereby referred to the Court of Claims pursuant to Section 151 of the Judicial Code, as amended; and the said court shall proceed expeditiously with the same in accordance with the provisions of such section and report to the Senate, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform Congress of the nature and character of the demand, as a claim, legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the Claimant.

The resolution refers the bill to this court "pursuant to section 151 of the Judicial Code" sections 1492 and 2509 of Title 28 United States Code Annotated, as revised on June 25, 1948. Section 1492 provides:

"The Court of Claims shall have jurisdiction to report to either House of Congress on any bill referred to the court by such House, except a bill for a pension, and to render judgment if the claim against the United States represented by the referred bill is one over which the court has jurisdiction under other Acts of Congress."

█ This section authorizes us to render judgment if we have general jurisdiction to do so, and it is clear that we do have jurisdiction of plaintiff's claim because it is one "founded upon [a] contract with the United States," and it is not barred by the statute of limitations. Section 1491 of Title 28 U.S.C.A. gives this court jurisdiction to render judgment upon a claim against the United States "founded upon any express or implied contract with the United States." We consider the case, therefore, as if it had been originally brought in this court.

Plaintiff's right to recover depends upon whether or not defendant is responsible for plaintiff's inability to secure sufficient labor, and upon whether defendant is liable for its delay in furnishing roughing-in drawings and plumbing and heating material.

First, as to the delay in securing sufficient labor. The commissioner of this court, to whom this case was referred for the taking of testimony and a report, has

reported that plaintiff was delayed 186 days on account of its inability to secure the necessary labor, particularly brickmasons. No exception was taken to this report by either party and we have adopted the commissioner's finding as one of our findings of fact.

Defendant's liability therefor depends on the following facts:

Pursuant to the provisions of the Davis-Bacon Act, Act of August 30, 1935, 49 Stat. 1011, 40 U.S.C.A. § 276a et seq., the Secretary of Labor, prior to the execution of the contract in suit, had determined that the prevailing wage for brickmasons "in the city, town, village, or other civil subdivision of the state" in which this work was to be performed was $1.25 an hour. Accordingly, the contract between plaintiff and defendant required that plaintiff pay its brickmasons $1.25 an hour, and it also provided that it should pay its carpenters $1.00 an hour, and common labor 40 cents an hour, as the Secretary of Labor had found. The contract fixed these as both the minimum and maximum wages to be paid.

There is no dispute that these were the prevailing wages in the vicinity at the time the contract was signed. Furthermore, plaintiff signed the contract with full knowledge of the situation and in the belief it could secure the necessary labor at these wages. Plaintiff had another Government contract at Camp Gordon, Georgia, and before signing the instant contract it interviewed the labor on this job and got their consent to work on the job at Warner-Robins for the specified wages. Believing it could secure the necessary labor at the rates fixed, it signed the contract. However, labor refused to work for these wages because they discovered they could get higher wages elsewhere.

When this developed plaintiff appealed to the Wage Adjustment Board in Washington asking for an increase in the rate for brickmasons, who were especially needed, from $1.25 to $1.37½ an hour. Plaintiff's appeal was granted on April 2, 1943. But at about the same time that it was granted the President issued Executive Order No. 9328, dated April 8, 1934, 50 U.S.C.A.Appendix, § 901 note, which "froze" labor on the jobs on which they were then employed, so long as they were needed. There was a shortage of labor on all public housing projects and this "freeze" order made it impossible for plaintiff to obtain the necessary labor even at the rate of $1.37½ an hour.

The proof shows that when it developed that plaintiff was unable to secure the necessary labor at the wages fixed defendant cooperated with it in every way it could in order to relieve its situation, except in the one respect of issuing this Executive Order No. 9328 * freezing labor on the job on which they were then employed. Defendant is liable, therefore, if at all, only because of the issuance of this "freeze" order.

This "freeze" order, however, was not an order directed at this particular job; nor does it appear that this job was in mind when it was issued. It was an order of general application affecting all contractors and businesses and laborers everywhere. It was issued in the exercise of the sovereign power of the United States, and it is clear under all the decisions that it was thus an act for which the Government is not liable. The leading case so holding is Jones v. United States, 1 C. Cl. 383, 384. Our opinion in that case was quoted with approval by the Supreme Court of the United States in Horowitz v. United States, 267 U.S. 458, 461, 45 S.Ct. 344, 69 L.Ed. 736. The quotation is as follows:

"The two characters which the government possesses as a contractor and as a sovereign cannot be thus fused; nor can the United States while sued in the one character be made liable in damages for their acts done in the other. Whatever acts the government may do, be they legislative or executive, so long as they be public and general, cannot be deemed specially to alter, modify, obstruct or violate the particular contracts into which it enters with private persons. * * * In this court the United States appear simply as contractors; and they are to be held liable only within the same limits that any other de-

---

* CFR 1943, Cum.Supp. 1267, 50 U.S.C.A.Appendix, § 901 note.

fendant would be in any other court. Though their sovereign acts performed for the general good may work injury to some private contractors, such parties gain nothing by having the United States as their defendants."

This court has reiterated and applied this principle in the following cases: Gothwaite v. United States, 102 C.Cl. 400; Barbour & Sons v. United States, 63 F.Supp. 348, 104 C.Cl. 360; Froemming Bros., Inc., v. United States, 70 F.Supp. 126, 108 C.Cl. 193, 212; Clemmer Construction Co. v. United States, 71 F.Supp. 917, 108 C.Cl. 718; Alger-Rau, Inc., v. United States, 75 F.Supp. 246, 109 C.Cl. 846; Ross Electric Construction Co., Inc., v. United States, 111 C.Cl. 644, 663. No court has ruled to the contrary.

The case at bar and the cases cited above are plainly different from the case chiefly relied upon by plaintiff, Sunswick Corporation of Delaware v. United States, 75 F.Supp. 221, 109 C.Cl. 772. The defendant's act in that case, of which plaintiff complained, was an order of the Wage Adjustment Board not of general application but specifically directed alone at the Sunswick Corporation requiring it to pay higher wages than those specified in its contract. It was directed toward that plaintiff alone and was not an order of general application, as was Executive Order No. 9328, with which we are concerned in this case.

■ Under the law there can be no doubt that, although plaintiff incurred increased costs as a result of the issuance of this freeze order, nevertheless, defendant is not liable therefor.

This freeze order no doubt increased the costs of numerous contractors and no doubt made it impossible for many businesses in the country to secure much needed labor, resulting in losses to them; but the Government is not liable in damages therefor, because it was an order of general application, issued by the Government in its sovereign capacity to promote the national defense. If as a result of it some particular person or many persons were damaged, it is something for which no compensation can or should be paid. The individual or individuals must stand such losses in the interest of the common good. They are no more entitled to recover them than is the man who is taken away from his business and drafted for military service. Such losses are damnum absque injuria.

Second, as to defendant's delay in furnishing roughing-in drawings and plumbing and heating material: It is not disputed that the defendant did not furnish the roughing-in drawings for the plumbing as soon as it should have done, nor did it furnish the plumbing and heating equipment as soon as it should have, and, if plaintiff had had on the job the necessary labor to do this plumbing work when the drawings and material were needed, it would have suffered a loss, and the defendant would have been liable for this loss, because in failing to furnish these things it was acting not in a sovereign capacity, but in its contractual capacity.

But plaintiff did not have the labor to use the roughing-in drawings and to use the plumbing and heating material, even if it had been furnished on time. Defendant's delay in furnishing them caused plaintiff no damage. The commissioner of the Court has found that the delay incident to the furnishing of these drawings and equipment ran concurrently with the delay due to the inability to secure labor. Neither party has taken any exception to this finding, and we have adopted it as one of our findings of fact.

■ Since the plaintiff was already delayed as a result of its inability to secure labor and it was not delayed any further, as the commissioner has found, and as we have found, by the failure of the defendant to furnish these roughing-in drawings and the plumbing and heating equipment, the defendant is not liable for these delays. Although defendant would have been liable had plaintiff had on hand the force to use the drawings and the equipment, still, because it did not have on hand the force to use them earlier than when they were furnished, defendant has caused plaintiff no damage and, therefore, plaintiff is not entitled to recover any sum on this account.

Plaintiff is, therefore, not entitled to recover, and its petition will be dismissed.

■ Plaintiff asks us to recommend in our report to the Senate that the amount claimed should be paid plaintiff because equitably due; however, we are of opinion that plaintiff is not entitled to recover either as a matter of law or equity. Whether or not plaintiff, and other persons damaged from the same or similar acts of the Government, ought to be compensated for their excess costs, although there is no legal or equitable liability therefor, is a matter for the determination of Congress.

■ We have found that plaintiff suffered excess costs in the amount of $72,289.66. Plaintiff claimed costs in excess of this amount. A part of this excess is due to the fact that plaintiff based its claim on 200 days' delay instead of 186. An extension of time of 200 days was granted, but only 186 days was for delay; the other 14 days' extension was for the additional time necessary to construct the community hall, not included in the original contract. If plaintiff should be compensated at all, it should be compensated for only 186 days' delay, 20 of which were due to weather conditions, running concurrently with the delays due to other causes.

■ Item 10 of plaintiff's claim we have reduced from $2,950.80 to $1,053.63. The amount disallowed is for interest and for depreciation on small tools. The claim for depreciation is absurd, since the entire cost of the tools was charged in the excess costs. No interest is chargeable to the Government except pursuant to statute or contract. No statute or contract is applicable here.

Items 14 and 15 were also for interest.

■ In item 17 plaintiff claimed the sum of $40,588.19 on account of inefficient labor. The proof is insufficient to support this item. Plaintiff introduced several of its employees who testified generally that the effectiveness of the labor on the job was reduced by about 20 percent because of the fact that the job was undermanned. Defendant's representative said that the labor output was average. Plaintiff's witnesses did not go into detail in support of their general statement that the labor on the job was ineffective, nor is there any record of such complaints by the plaintiff. The proof is unsatisfactory that the inadequacy of the labor on the job, or other delays, rendered more ineffective such labor as plaintiff was able to obtain. Even if plaintiff were entitled to recover at all on account of its inability to secure labor, it would not be entitled to recover this item.

The foregoing findings of fact, conclusion of law, and opinion will be certified to the Senate, as required by Senate Resolution No. 122, adopted June 16, 1947. It is so ordered.

HOWELL, MADDEN, and LITTLETON, Judges, and JONES, Chief Judge, concur.