FROEMMING BROS., INC., OF TEXAS v. UNITED STATES.

No. 46117.

Court of Claims.

March 3, 1947.

Eliot C. Lovett, of Washington, D. C., for plaintiff.

Grover C. Sherrod, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

On December 5, 1941, the plaintiff entered into a contract with the Government to construct roads, streets, taxi strips, aprons, runways, etc. at Howard Field, Canal Zone. The contract provided that the Government was to furnish all cement, sand, crushed rock, gravel and reenforcing steel, and was to do the excavating, filling, grading and compacting. The contract price was $462,324.02. The work was to be commenced on or before January 15, 1942, and the streets were to be completed within 90 days after December 31, 1941, and the roads, taxi strips, aprons etc., within 176 days after that date.

The plaintiff was delayed, to its damage, in the performance of its work because the Government did not do the grading in time to enable the plaintiff to proceed promptly, and did not furnish the sand, cement and other materials as they were needed by the plaintiff. An additional short delay was caused by the Government's ordering the work to be shut down while it was transporting gasoline through the area. There is also a claim that the Government required the plaintiff to ship to the Canal Zone a machine which was not needed and was never used, thus subjecting the plaintiff to the useless expense of the transportation of the machine and a crew of men to operate it.

The Government's defense to its admitted failure to do its preparatory work and furnish the necessary materials within the times contemplated in the contract is that, after the attack on Pearl Harbor and the threatened danger to the Panama Canal and the United States which was made apparent by that attack, the military authorities of the United States in the Caribbean area pursuant to orders from Washington, diverted the labor and material which would have been available to the plaintiff's project, to other and more immediately important work. The Government invokes the doctrine of Horowitz v. United States, 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 736, affirming 58 Ct.Cl. 189; Deming v. United States, 1 Ct.Cl. 190; Jones and Brown v. United States, 1 Ct.Cl. 383; Wilson v. United States, 11 Ct.Cl. 513; Gothwaite v. United States, 102 Ct.Cl. 400; Barbour & Sons v. United States, 63 F.Supp. 349, 104 Ct.Cl. 360; Standard Accident Ins. Co. et al. v. United States, 59 F.Supp. 407, 103 Ct. Cl. 607, cert. denied 326 U.S. 729, 66 S.Ct. 37; R. R. Hallman et al. v. United States, Ct.Cl., 68 F.Supp. 204.

The doctrine of these cases, that the Government as a contractor is excused from performance of its contracts if the Government as a sovereign makes laws, regulations or orders which prevent that performance, seems to us to be an equitable doctrine. If the contract interfered with were between private contractors, and the interposition of a Government priority order or military regulation delayed performance, the contractor who was hurt by the delay could not, of course, claim compensation from the other party to the contract, and would have to bear his own loss. There seems to us to be no reason why a contractor whose contract happens to be with the Government, should be in a more favored position, with reference to the inconveniences and damages caused by the application of a law or government regulation, than other persons who must accommodate themselves to the law or regulation.

As shown in our finding 18, we think that the Government has proved its defense, as to its delay in doing the preparatory work and furnishing materials to the plaintiff. The plaintiff's project, which was for the permanent and long range im-

128

provement of Howard Field, became relatively unimportant, after Pearl Harbor, until everything had been done which could be done immediately, to insure the safety of the Panama Canal and our defenses and positions in the area. Some supplies had to be brought from great distances and the safety of shipping was uncertain and later became critical. Prudence demanded that materials in the zone be held in reserve, if not immediately needed for urgently required construction. The plaintiff has presented evidence that, in some instances, labor and materials were used in work that seems to have been no more urgent than the plaintiff's work. But whatever was done was done by the military command and it was the responsible agent of the sovereign at the time. There is no indication that any discrimination was purposely practiced against the plaintiff. While the Government's evidence was not specific in showing just what use was made of particular labor and materials, and why they were so used, we are convinced that, on the whole, they were applied to uses more urgent than the plaintiff's project.

The plaintiff's claim with regard to the transportation of the machine, Paving Unit No. 2 and its crew, is dealt with in our findings 11 and 12. We have concluded that there was no reasonable prospect that this machine would be necessary for the work, and that, in view of the harmful delay to which the plaintiff was being sub-

jected by the Government, it was improvident, and inconsiderate of the plaintiff's interests, to require the shipment of the machine. It was, therefore, a breach of the contract and the plaintiff may recover on account of it. Only the cost of the ocean freight from New Orleans to the Canal Zone has been allowed, since the plaintiff's protest was too late to have saved the cost of the inland freight.

The plaintiff's claim on account of the interruption of its work for four days by a stop order given on April 22, 1943, and revoked later in the same day, but which, because the native workmen could not be assembled again for four days, interrupted the plaintiff's work for that time, is dealt with in our finding 9. The Commissioner of this court found, as we do, that the order to stop work was improvidently given. No explanation or justification for this apparently erratic and inconsiderate order was presented by the Government. We think the plaintiff may recover on this claim.

The plaintiff is entitled to recover $20,905.87.

It is so ordered.

JONES, WHITAKER, and LITTLETON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.