## WALSH et al. v. UNITED STATES.
### No. 49274.

United States Court of Claims.

Decided Feb. 5, 1952.

590

Solomon Dimond, Washington, D. C., for plaintiff.

John J. McGinty, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff is the sole distributee of the assets of Garbutt-Walsh, Inc., a corporation, since dissolved, which made the contract with the Government which gave rise to this suit. Garbutt-Walsh, Inc., will be referred to hereinafter as the contractor.

On July 14, 1942, the contractor, a shipbuilder in San Pedro, California, made a proposal to the Navy Department to build one hundred plane personnel boats. Negotiations were carried on and the contractor, on July 28, made its final proposal, and an award, dated August 11, 1942 was made to the plaintiff. The formal contract was dated August 21. It was a negotiated fixed-price contract for 100 plane personnel boats without engines for a unit price of $2,780 per boat, a total contract price of $278,000. The contract was accepted by the contractor on September 3, 1942.

One of the plaintiff's claims in this suit relates to wages. The basic wage rates in the area prior to July 18, 1942 were $1.12 per hour for first-class skilled mechanics in shipyards. On April 27, 1942, the Pacific Coast Zone Wage Stabilization Agreement raised those wages to $1.20 per hour, effective July 18. The increased rate could not become applicable to Navy work until the Navy concurred in the agreement. It did not so concur until August 8. At the time, therefore, that the contractor made its proposals and negotiated for the contract, the only wage which it could have lawfully paid to its mechanics was $1.12 per hour. Both it and the Navy negotiator with whom it dealt probably knew that the wage rate might be increased by the Navy's subsequent concurrence in the agreement. The plaintiff alleges that the Navy negotiator insisted that the contractor compute its costs on the basis of the existing lower wage and promised to increase the contract price to include the increased wages, if the Navy should concur in the Zone Agreement. No oral testimony was taken in the case, hence it is not possible to resolve the question on the basis of direct evidence. The plaintiff points to the following circumstances which, he says, proves that his allegation is true. One week after the contract here

in suit was negotiated, another contract, NOBs 322, was negotiated between the same representatives of the parties. This contract which was dated August 28, 1942 contained a specific statement that the price was based on a wage rate of $1.12 for first-class skilled mechanics. This statement was treated by the Navy as an agreement that if wage rates were raised, the contract price would be raised to absorb the increase.

■ We think that the circumstance pointed to by the plaintiff as proof of his allegation is highly persuasive. We are not able to think of any reason why the Navy negotiator, in these two sets of nego-tiations taking place only a week apart, would have handled the problem of wages differently in the two cases. He apparently was unaware, on August 28 when the sec-ond contract was written up, that the Navy had, 20 days before, concurred in the Zone Agreement. If so, he was of course una-ware of it at the earlier time when the con-tract here in suit was negotiated and formu-lated. It would seem completely natural, then, that the negotiators in both cases, being aware of a possible or probable im-pending wage increase, but unaware of the fact that it had already gone into effect, would deal on the basis of the old wage, but with a provision to increase the price if the higher wage did go into effect. We think that, because of their mutual ignor-ance of a material existing fact, they made a writing which they would not have made but for that ignorance; that if they had been aware of the actual fact, they would have negotiated and contracted on that basis. We conclude, therefore, that the plaintiff may recover its additional labor costs of $16,171.44.

The plaintiff's second claim is for the ad-ditional expense incurred by the contractor as a result of delays in completing and de-livering the boats, which delays were caused by the Government. The contract required the Navy to furnish the propulsion engines which were to be installed by the contractor. By a change order, dated January 19, 1943, the contract was modified to provide that the contractor should install sponge rubber gunwale pads to be supplied by the Navy.

The Navy did not furnish the engines and the gunwale pads as rapidly as the contrac-tor completed the hulls of the boats and was ready to install them. This required the contractor to move and store and re-clean and refinish some of the boats, and to hire extra guards to protect them. The de-lays in completion and delivery of the boats were due to a variety of causes. We have found that the Navy's lateness in deliver-ing engines and gunwale pads was the cause of 1,450 boat-days of delay, which caused the contractor $3,171.03 of extra expense.

■ The Government denies liability for the extra expense caused by its lateness in delivering the accessories. We think that when it agreed to furnish the engines and gunwale pads to be installed in the boats by the contractor, it agreed to furnish them in time to be installed in the ordinary and economical course of the performance of the contract. The Government says that it had many other contracts for the con-struction of similar boats, and that it dis-tributed such engines and gunwale pads as were available fairly among the contrac-tors. It says that its decision as to this distribution was a sovereign act, for which it cannot be held liable as a contractor. See Froemming Bros. Inc. v. United States, 70 F.Supp. 126, 108 Ct.Cl. 193 and cases there cited. We think the doctrine is not appli-cable here. So far as appears, the Govern-ment could, by letting its contracts promptly for the building of the accessories, have had them available on time. There was, so far as we are aware, no general system of priorities or allocations which prevented the Navy from acquiring these accessories as rapidly as it had agreed to furnish them. The plaintiff may recover $3,171.03 on his claim for delays caused by the Government.

The plaintiff may have a judgment for $19,342.47.

It is so ordered.

HOWELL and LITTLETON, JJ., con-cur.

JONES, Chief Judge (dissenting in part).

I do not think there is sufficient evidence in the case to justify the court in reform-

ing the contract on the basis of mutual mistake of fact. Both parties knew that a wage adjustment was at least under consideration. While the plaintiff may not have known that the order increasing the wage rate had been concurred in by the Navy, which was a step necessary to its binding effect, the contract was signed without a provision for an adjustment in price in the event of such a change. The evidence of an oral promise to permit a price increase if and when the Zone Stabilization Board Agreement was ratified by the Navy is not sufficiently clear when linked to the other circumstances recited in the majority opinion to justify the court in reforming that part of the contract.

I would disallow recovery of the additional labor costs of $16,171.44.

WHITAKER, J., agrees with the foregoing opinion.