**POIRIER & McLANE CORP.**
v.
**UNITED STATES.**
No. 49623.

United States Court of Claims.
April 6, 1954.

David Cobb, Washington, D. C., I. S. Weissbrodt and Abe W. Weissbrodt, Washington, D. C., on the brief, for plaintiff.

Walter Kiechel, Jr., Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, and MADDEN, Judges.

LITTLETON, Judge.

In this action plaintiff seeks to recover $19,901.08, representing increased labor costs incurred by plaintiff, a New York corporation, in the performance of a contract with the defendant for the construction of a flight hangar in Buffalo, New York. The increased labor costs resulted from the payment by plaintiff of a higher wage rate to unskilled laborers working on the project than that contained in the contract specifications, as fixed and determined by the Secretary of Labor under the Davis-Bacon Act, 40 U.S.C.A. § 276a et seq.

The case is presently before the court on motions by plaintiff and defendant for summary judgment. From the allegations of the petition, several exhibits, and an agreed statement of facts not in dispute, it appears that defendant, on July 1, 1943, issued an invitation for bids for the construction of a flight hangar. Plaintiff submitted the low bid, and on July 14, 1943, plaintiff and defendant acting through the United States Engineer Office entered into a contract whereby plaintiff agreed to furnish all labor, plant and material and perform all work required for the construction of a flight hangar at Buffalo Municipal Airport, Buffalo, New York, for an estimated consideration of $1,466,402. This figure was based in part upon lump sum prices and in part upon unit prices. Work was commenced within three days after July 15, 1943, and was to be completed not later than November 12, 1943. The contract work was completed by plaintiff and accepted by defendant within the contract performance period as subsequently extended.

As required by the Davis-Bacon Act,[1] the contract specifications which accompanied the bid and became a part of the contract contained a schedule of the minimum wages to be paid various classes of laborers and mechanics, based on wages determined by the Secretary of Labor to be prevailing on projects of a character similar in nature to the contract work in the contract locality. The minimum wage rate to be paid unskilled laborers on the contract work was fixed at 85 cents per hour. This was the minimum and also the maximum rate. Prior to submitting its bid, plaintiff made careful investigation for the purpose of determining the availability of labor, and the wages it would have to pay to obtain the required labor. Plaintiff found that the war wage stabilization program had been established in the Buffalo area, and that under this program the United States Employment Service (hereinafter referred to as USES) was responsible for directing and regulating the hiring of workers in the Buffalo area. Plaintiff also found that the USES was predicting, in June and July, that an abundant supply of labor would be available in the Buffalo area during August, September, October, and November.[2] Plaintiff also consulted with labor unions and other sources in the Buffalo area, and found and determined that the unions expected to be able to provide all necessary unskilled labor at the specified wage rate of 85 cents per hour. In reliance upon its investigations and upon the decision of the Secretary of Labor and the wage provisions in the specifications, plaintiff made no allowance in the computation of its bid for any increase in wage rates in the performance of the contract.

Article 17 of the contract directed the contractor to pay to all mechanics and laborers employed directly upon the site of the work wages computed at "rates not less or more than those stated in the

---

[1]. Act of August 30, 1935, 49 Stat. 1011, as amended by the Act of June 15, 1940, 54 Stat. 399, 40 U.S.C.A. §§ 276a and 276a–1.

[2]. The original contract completion date was specified as not later than November 12, 1943.

specifications (subject to Executive Order No. 9250, 50 U.S.C.A.Appendix, § 901 note, and the General Orders and Regulations issued thereunder) regardless of any contractual relationship which may be alleged to exist between the contractor * * * and such laborers and mechanics * * *."

Section 1–27 of the specifications provided in part:

"(a) The minimum wages to be paid laborers and mechanics for work being performed for the United States Government as determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the pertinent locality, are as follows:

"Title: Department of Labor Determination Dated September 15, 1942, as modified March 25, 1943, for *Erie County*, N. Y.

"*Classification of Laborers and Mechanics:*

\* \* \* \* \* \*

*Minimum
rates of wages
per hour*

Laborers, unskilled.....$0.85

\* \* \* \* \* \*

"(b) * * * The wages specified in this schedule shall be the maximum wages to be paid, subject, however, to Executive order No. 9250 and the General Orders and Regulations issued thereunder.

"(c) The contractor will be expected to make his own investigation and determine for himself both the availability of labor possessing the necessary skill and the rates of wages necessary to obtain the required quantity and quality thereof. Whenever the contractor, in pursuance of the foregoing, determines that he is unable to recruit the necessary labor with the necessary skills at the predetermined rates applicable to his contract, he will make request direct to the Wage Adjustment Board, for a wage adjustment, which shall contain a statement that the adjustment, if authorized, will be absorbed by the contractor and will not constitute a basis for a claim against the Government. * * *"

The contract also contained the standard Article 3, relating to changes in the drawings and specifications, and providing for an equitable adjustment for increase in price or time for performance.

The contract work was of importance to the war effort, and there was urgent need that it be completed within the contract performance period. Work was commenced within three days after July 15, 1943. In August of 1943, shortly after plaintiff had begun performance, it found that unskilled labor was being offered and paid $1.00 per hour or more on other construction projects in the Buffalo area, and that in order to procure a sufficient supply of unskilled laborers it would be necessary for plaintiff to pay a wage rate of $1.00 per hour.

Plaintiff thereupon requested that defendant change the 85 cents per hour wage rate contract specification to $1.00 per hour, retroactively to the date of execution of the contract, and to increase the contract price accordingly. Defendant was also notified that plaintiff would not make a request for a wage adjustment to the Wage Adjustment Board under paragraph 1–27(c) of the contract specifications, for the reasons that plaintiff believed the 85 cents per hour specification to be in error; that this error constituted a basis for a claim against the defendant for reimbursement, and that plaintiff accordingly would not agree that an adjustment, if authorized by the Wage Adjustment Board, would "be absorbed by the contractor." Plaintiff made no request to the Wage Adjustment Board, and no order was issued by the Board authorizing a wage adjustment under the provisions of paragraph 1–27(c) of the. specifications.

In September 1943, the Department of Labor reviewed data bearing upon wage rates prevailing for construction

labor in the Buffalo area, and in a decision by the Secretary of Labor dated October 1, 1943, the Secretary's determination of September 15, 1942, as modified, was changed, *inter alia,* by increasing the wage rate for unskilled laborers to $1.00 per hour, retroactively. On October 28, 1943, a letter was issued by the Secretary of Labor stating in part as follows:

"Due to an inadvertence, the rates for various classifications which should have been modified on June 15, 1943, were not so modified. The rates for these classifications should have been specified on June 15, 1943, as follows:

\*　　\*　　\*　　\*　　\*　　\*

*Per hour*
Laborers, unskilled......... $1.00
\*　　\*　　\*　　\*

It has been stipulated that payment by plaintiff of a wage rate of $1.00 per hour for all unskilled laborers under the contract was made with the knowledge of and without objection by the contracting officer, and that plaintiff incurred an increased labor cost of $19,901.08 by reason of payment of the $1.00 per hour wage rate in lieu of the original wage specification of 85 cents per hour. In fact the contracting officer directed that such increased rate be paid.

Administrative proceedings pursued by plaintiff in an attempt to secure reimbursement for its increased labor costs culminated in the denial of plaintiff's claim, and this suit was thereafter initiated. Everyone concerned was fearful that they did not have authority to allow the increase and the matter was finally sent to the General Accounting Office.

Plaintiff contends that the erroneous 85 cents per hour wage rate, contained in the original decision of the Secretary of Labor and the contract specifications, constituted a misrepresentation of a material fact by defendant, relied upon by plaintiff to its detriment. Alternatively, plaintiff urges that the "inadvertence" letter of October 28, 1943, amounted in effect to a change in the specifications, for which defendant is liable to plaintiff in the amount of the resulting increase in labor costs to plaintiff. It appears to us that there was a mutual mistake of fact.

Defendant takes the position (1) that the redetermination of wage rates by the Secretary of Labor did not operate to change the contract specifications; (2) that plaintiff is precluded from recovery for failure to follow the procedure for wage adjustment provided in the contract; (3) that there was no actionable misrepresentation by defendant as to the prevailing wage rate for unskilled laborers; and (4) that plaintiff may not claim a mutual mistake of fact, because its own investigation should have disclosed that the $1.00 per hour wage rate was the actual prevailing rate. None of defendant's contentions is supported by the record.

We will discuss first defendant's second contention, which is, in essence, that plaintiff has failed to pursue the administrative remedy provided by the contract. Paragraph 1–27(c) of the specifications, upon which this argument is premised, reads in part as follows:

"The contractor will be expected to make his own investigation and determine for himself both the availability of labor possessing the necessary skill and the rates of wages necessary to obtain the required quantity and quality thereof. Whenever the contractor, in pursuance of the foregoing, determines that he is unable to recruit the necessary labor with the necessary skills at the predetermined rates applicable to his contract, he will make request direct to the Wage Adjustment Board, for a wage adjustment, which shall contain a statement that the wage adjustment, if authorized, will be absorbed by the contractor and will not constitute a basis for a claim against the Government \* \* \*."

Defendant asserts that plaintiff was contractually obligated to make request to the Wage Adjustment Board for a

wage adjustment. If this be true, an issue we do not decide, plaintiff was also contractually obligated to include in the request a statement that the wage adjustment, if authorized, would be absorbed by the contractor and would not constitute a basis for a claim against the Government. The plaintiff refused to do this, and, we think, rightfully in the circumstances.

When a contract provides a method for obtaining additional compensation for increased wages, and the contractor fails to pursue the required contractual remedy, it is precluded from seeking relief in this court, Lustbader Construction Co. v. United States, 62 Ct. Cl. 549, 562–563. The rule is inapplicable to this case, however. The remedial provisions of the contract which defendant would require plaintiff to follow, at the risk of being precluded from later litigation to recover increased labor costs seem to the court to be illusory. We hold that plaintiff is not precluded from recovery in this suit by reason of its failure to make request to the Wage Adjustment Board for a wage adjustment.

The next question is whether or not plaintiff has established its right to recover the increased cost.

In conformity with the Davis-Bacon Act, supra, and Executive Order No. 9250,[3] the advertised contract specifications advised prospective bidders that the successful bidder would be required to pay neither less nor more than the wage rates predetermined by the Secretary of Labor, to be the prevailing wage rates on projects of a character similar in nature to the contract work in the pertinent locality, unless, of course, the Secretary changed the rate. Prospective bidders were further advised that the prevailing wage rate for unskilled laborers, as determined by the Secretary of Labor, was 85 cents per hour. There is no dispute as to this fact.

Before submitting its bid plaintiff investigated the labor situation in the Buffalo area, and determined to its satisfaction that there would be during the contract performance period an abundant supply of unskilled labor available in that area, and that the labor unions expected to be able to furnish the necessary unskilled labor at the 85 cents per hour wage rate. Plaintiff's investigation was reasonable and adequate. Plaintiff consequently made no allowance in preparing its bid for any increase in wage rates. Plaintiff was the low bidder, and the contract was executed on July 14, 1943.

In August of 1943, plaintiff found that unskilled labor was being offered and paid $1.00 per hour or more on other construction projects in the Buffalo area, with approval of defendant, and apparently, although the record is not entirely clear on this point, plaintiff then began to pay unskilled labor working on the instant project a wage rate of $1.00 per hour, in order to keep the work moving, and this was done with the knowledge and approval of the defendant.

On October 1, 1943, the Secretary of Labor modified the wage predetermination which he had made and which was in effect at the time the contract was awarded and executed, by increasing the wage rate for unskilled laborers to $1.00 per hour. On October 28, 1943, the Department of Labor determined that, as it stated the matter, "due to an inadvertence" the wage rate for unskilled laborers which should have been modified on June 15, 1943, had not been so modified, and that the wage rate of $1.00 per hour should have been specified on June 15, 1943. Such rate was therefore increased retroactively to June 15, 1943.

Plaintiff asserts that its right to recover depends upon the meaning and effect to be given the "inadvertence" letter. We are of the opinion that the decision of October 28, 1943, referred to as "inadvertence letter" alters the result, and that plaintiff is entitled to recover the increased labor costs incurred by it by reason of its payment of the higher

wage rate instead of the wage rate stated in the contract specifications.

The defendant's statement in the specifications as to the prevailing wage rate for unskilled laborers was a statement of an existing fact, duly determined and upon which plaintiff was entitled to rely. Walsh Brothers v. United States, 69 F.Supp. 125, 107 Ct.Cl. 627, 642. The "inadvertence letter" of October 28, 1943, clearly amounts to a determination or finding by the Department of Labor that the prevailing wage rate for unskilled laborers at all times here pertinent, from June 15, 1943, at least, was not 85 cents per hour, as stated in the Secretary's original determination and the specifications, but $1.00 per hour.

There consequently was a misrepresentation by defendant, perhaps an innocent one, as to the prevailing wage rate for unskilled laborers, but one upon which plaintiff relied. Plaintiff, although it investigated the labor situation, did not discover the erroneousness of the defendant's statement, and relied upon the representation contained in the specifications. It is therefore entitled to recover the increased labor costs resulting from defendant's misrepresentation. Albert and Harrison, Inc. v. United States, 68 F.Supp. 732, 107 Ct.Cl. 292.

We have carefully considered defendant's argument that had plaintiff's investigation been an adequate one, it would have disclosed that all contractors in the Buffalo area had been paying $1.00 per hour to unskilled laborers for more than a year prior to July 1, 1943, the date of issuance of invitations for bids on the instant contract. We think defendant's contention is without merit, and not supported by the record. This case is to be distinguished from the case of United States v. Binghamton Const. Co., Inc., 347 U.S. 171, 74 S.Ct. 438, in that the contractor did make an adequate and thorough investigation, and the provisions of the contract fixed not only the minimum wages but also the maximum wages which the contractor could pay at the time the contract was made, on the basis of the decision of the Secretary of Labor. The change in that decision, and therefore, in the contract, brought about the increased costs here involved, and the contracting officer required plaintiff to pay the new increased wage rates.

The stipulated facts relative to plaintiff's investigation have heretofore been stated. All else aside, there is nothing in the record before the court which would tend to indicate in any manner that plaintiff's investigation was inadequate, nor that it was made without reasonable care and diligence. It is true that the Secretary of Labor's subsequent inadvertence letter indicated that the prevailing rate for unskilled labor at the time plaintiff conducted its investigation was $1.00 per hour, not 85 cents per hour, as plaintiff reasonably believed. This fact in itself, however, furnishes no basis for sustaining defendant's position. The Secretary of Labor simply increased the wage rate retroactively and the contracting officer required plaintiff to pay the rate.

■■ In any event, however, the parties contracted in the circumstances of this case under a mutual mistake of fact. Because of their mutual ignorance of the actual prevailing wage rate for unskilled laborers, as subsequently determined by the Secretary of Labor, the contract as executed did not reflect the true intent of the parties to the transaction. See Walsh v. United States, 102 F.Supp. 589, 121 Ct.Cl. 546. At the time the contract was executed, both plaintiff and defendant were unaware of the actual prevailing rate, but both parties intended, and indeed the Davis-Bacon Act required, in view of the Secretary's decision, that the contract specifications should contain this rate. This court may, and it is its duty, in the exercise of its equitable jurisdiction, and for the purpose of awarding or refusing to award a money judgment against the United States, to reform the contract so as to reflect the true understanding and intent of the parties to it. Sutcliffe Storage & Warehouse Co., Inc., v. United States, 112 F.Supp. 590, 125 Ct.Cl. 297, and cases there cited. We do so here by

correcting the erroneous wage rate contained in the specifications, and basing our judgment on the contract as reformed.

We hold, for the reasons heretofore indicated, that plaintiff is entitled to recover its increased labor costs, in the amount of $19,901.08, resulting from payment by it of a wage rate of $1.00 per hour instead of the wage rate contained in the contract specifications. The conclusion we reach makes it unnecessary to determine whether or not the "inadvertence letter" of October 28, 1943, amounted to a change in the contract specifications.

Plaintiff's motion for summary judgment is granted. Defendant's motion is denied, and judgment is entered in favor of plaintiff for $19,901.08. It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.