CO–AX ENTERPRISES CORP., a Utah
corporation, Plaintiff and Appellant,

v.

The TRIAX CO., a Utah corporation,
Defendant and Appellee.

No. 20033.

Supreme Court of Utah.

Oct. 11, 1989.

Rehearing Denied Nov. 8, 1989.

Claron C. Spencer, Dale E. Anderson, Salt Lake City, for plaintiff and appellant.

William L. Nixon, Alpine, Denver C. Snuffer, Salt Lake City, for defendant and appellee.

STEWART, Justice:

Co–Ax Enterprises ("Co–Ax") appeals from a judgment of the trial court which held that Co–Ax failed to prove its breach of contract claim brought against The Triax Company ("Triax"). The parties have failed to make clear the exact procedural course of the case in the trial court. Nevertheless, we believe that the case is subject to an appropriate decision and proceed on the basis of the case as presented in the briefs.

The United States Navy contracted in late 1978 with the defendant, Triax, to renovate certain military housing on the island of Midway. The Navy contract included provisions that Triax was to provide all the materials and equipment necessary for the work, that the manner of delivery of materials and equipment to the island was the choice of Triax, and that the term of the contract was 360 days. In January of 1979, Triax submitted to the Navy a progress schedule which was approved February 10, 1979, calling for the work to be completed within a five-month period.

Triax subcontracted the labor for the job. During late 1978 and early 1979, Triax negotiated with the plaintiff, Co–Ax, to provide the labor force for all but the plumbing work for the project. The contract price between Triax and Co–Ax was determined by a calculation of the cost of labor plus an agreed profit per month for a period of five months. On January 11, 1979, Co–Ax and Triax signed a formal contract. The contract, however, was silent as to the supply and delivery of materials and equipment and the length of time for which the labor force was to be supplied by Co–Ax.

The laborers supplied by Co–Ax arrived on the island in the first part of February. At the end of five months, the renovation of the buildings had not been completed and the work had come to a standstill because of shortages of materials due to delays in the delivery of materials and equipment. The material shortages were caused by shipping problems. Triax had selected the Military Sea Transport Service as the shipping agent. During this period, Co–Ax received payments from Triax on the contract, for the labor performed but nothing for the profit which had been agreed upon.

Co–Ax's request for additional funds to remain on the island for a longer term was refused by Triax, and Co–Ax's construction crew abandoned the project. The job was completed by a new work crew employed

by Triax. Subsequently, Co–Ax, as the labor subcontractor, sued Triax, contending that the parties had agreed that Co–Ax would provide the labor source for a five-month period and that Triax had promised to supply materials and equipment. Co–Ax contended that the inability to complete its work was the result of shortages of materials and equipment due to delays in delivery which were the responsibility of Triax. Co–Ax sought damages for lost profits and compensation for tools which had been left behind.

Triax denied that it had agreed to provide materials and equipment to meet Co–Ax schedules and denied that the subcontract was to be completed within the five-month period. Triax contended that the January 11, 1979 writing was the entire agreement between the parties. Triax counterclaimed against Co–Ax, seeking damages for the additional employees which it had to hire to complete the project.

The case was tried to a jury. At the commencement of the trial, Triax stipulated that it retained the responsibility to provide materials and equipment for the work on Midway Island under the contract. After a three-day trial, the case was submitted to the jury on the basis of a special verdict containing several interrogatories. The jury found that the written contract did not constitute the entire agreement between the parties; that the parties intended that the contract be performed within a time other than 360 days; and that the nonperformance of the subcontract by Co–Ax was prevented or substantially hindered by the conduct of Triax. However, the jury also determined that Triax did not promise or guarantee that sufficient materials would be provided at the job site to enable Co–Ax to perform within five months. Nevertheless, the jury found that the lack of sufficient materials at the job site was the cause of Co–Ax's failure to complete the job within the time provided. The jury found that Co–Ax sustained $92,056 in damages based on its theory of lost profits and $3,000 for the lost tools.

Thereafter, the trial judge issued an opinion noting that the jury had found that Triax had not agreed to transport materials within the five months asserted by Co–Ax. On appeal, Co–Ax asserts that there was an "implied promise" on the part of Triax to deliver the materials in five months and that Triax is liable for lost profits in light of the jury's finding that the plaintiff's performance was "substantially hindered" by "the conduct of the defendant in the delivery of materials and equipment." The answer to the plaintiff's argument, asserted initially in the trial court and again in this Court, was stated by the trial court in its opinion:

Interrogatory No. 5 and the "No" response thereto must be viewed in the context of the evidence that was presented, the plaintiff claiming that there was a promise or guarantee that the materials would arrive timely for the five month completion, and defendant claiming that it did not make such promise or guarantee although acknowledging its responsibility for the acquisition and transportation of those items to the job site.

In the context of the evidence presented and the conferences that occurred between the parties the jury concluded that the defendant did not assume liability in any event for the failure of expeditious transportation of materials to complete the job as planned within five months, and that the plaintiff was aware that no such commitment could be made both on the basis of conversation as well as the experience they had with such jobs in the past.

The other findings of the jury justifying the plaintiff in terminating its work after the five month period had expired was supported by evidence that both knew of the possibility of delay by the failure of timely arrival of material. The jury apparently concluded that each assumed the risk of that eventuality and since the plaintiff had been paid for all of its time to the point of its termination, it was not damaged beyond what was contemplated by their agreement.

We agree with the trial court.

Affirmed.

DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Associate Chief Justice (dissenting):

I dissent. I believe that the trial court erred in awarding judgment to defendant through a misinterpretation of the answers made by the jury to interrogatories in the special verdict.

In summary, the jury found that the January 11, 1979 written contract (which did not contain an express promise that Triax would timely deliver materials to the island) was not the entire agreement between the parties; that the parties orally agreed, in addition, that Co–Ax would perform its labor in five months as indicated by Triax to the Navy; and that the performance by Co–Ax was "prevented or substantially hindered" by the conduct of Triax in the delivery of materials and equipment. However, the jurors were divided four to four as to whether Triax made a "promise or guarantee" that sufficient materials would be provided at the job site to enable Co–Ax to perform within the five-month period.

The trial court interpreted the jury's failure to find a promise or guarantee by Triax to mean that there was no promise or guarantee made by Triax to timely deliver materials. Thus there was no breach of contract, and Co–Ax, having been paid its labor up-to-date, suffered no damage. The trial court placed great emphasis on the fact that the two parties had contracted before on work on special government projects at remote places and both realized that since the delivery of materials was largely in the hands of shippers over whom they had no control, Triax would not assume the responsibility for the timely delivery of materials which would allow Co–Ax to finish its work before or by the expiration of five months.

I believe that there is a more reasonable interpretation of the jury's answers to the interrogatories which leads me to conclude that judgment should have been entered for Co–Ax.

First, if, as the trial judge reasoned, the parties were well-aware and could reasonably foresee that there might be delays in the delivery of materials to the island, this contingency certainly would have been provided for expressly in the written contract prepared by Triax and signed by the parties. Instead, the contract was entirely silent as to this matter. While the jury was unable to find that Triax made a promise or guarantee that there would be timely delivery of materials, that failure to so find is inconsequential. An express promise by Triax was unnecessary; such a promise is implied in construction contracts. See *Guerini Stone Co. v. P.J. Carlin Constr. Co.*, 248 U.S. 334, 340, 39 S.Ct. 102, 104, 63 L.Ed. 275, 283 (1919); *Walsh v. United States*, 102 F.Supp. 589, 591, 121 Ct.Cl. 546, 554–55 (1952). Triax did not negate this implied promise in the written contract it prepared nor in any subsequent oral agreement.

Second, it seems highly unreasonable to me that Co–Ax would agree to provide laborers at a far-distant point to do certain work for a fixed price within a five-month period without assurance that it would not suffer delays due to lack of materials. Undoubtedly, Co–Ax intended to make a profit on the contract. Every day that its laborers sit idle, its profit is diminished. Were Co–Ax being paid for its labor by the day or the hour, the case might be different. But when a labor contract is for a fixed amount, it is most important that the work progress according to a schedule so that the cost of labor does not consume any expected profit and, indeed, even exceed the contract price. The difficulty with the trial court's interpretation is that it, in effect, concludes that Co–Ax was willing to take its laborers to the island in the hope that materials would always be available but, if they were not, Co–Ax could leave the job and simply be paid for that part of the construction which it had completed. I cannot agree with this interpretation that Co–Ax simply took its chances. This is contrary to any knowledge and experience I have about the construction industry.

I would reverse the judgment and remand the case to the trial court to enter judgment for Co–Ax.

HALL, C.J., concurs in the dissenting opinion of HOWE, Associate C.J.