**EMERALD MAINTENANCE, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 90–1185.**

United States Court of Appeals, Federal Circuit.

Feb. 12, 1991.

---

George Q. Sewell, Smith, Currie & Hancock, Atlanta, Ga., argued, for appellant. With him on the brief, was John T. Flynn.

Jonathan M. Kronheim, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for appellee. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Stephen J. McHale, Asst. Director, Washington, D.C. Also on the brief, was Robyn U. Au, U.S. Army Corps of Engineers, Pacific Ocean Div., Fort Shafter, Hawaii, of counsel.

Before NIES, Chief Judge, NEWMAN and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

This is an appeal from the August 3, 1988, decision of the Armed Services Board of Contract Appeals, ASBCA No. 36628 and 36632, 88–3 B.C.A. (CCH) ¶ 21,103, 1988 WL 97169, dismissing certain of appellant's claims involving two roofing contracts with the United States Army, and the September 26, 1989, decision of the Board, ASBCA No. 36628, 36632 and 37026, 90–2 B.C.A. (CCH) ¶ 22,719, 1989 WL 222697, denying appellant's claims for compensation under the contracts. We affirm.

## BACKGROUND

On September 16, 1985, the United States Army awarded Contract No. DACA83–85–C–0131, entitled "Reroofing of a Hokulani Housing Area, Pearl Harbor, Oahu, Hawaii," to Emerald Maintenance, Inc. with a contract price of $474,322.02. On September 23, the Army also awarded to Emerald Contract No. DACA83–85–C–0143, entitled "Reroofing of Catlin Park Housing Areas, Pearl Harbor, Oahu, Hawaii," with a contract price of $913,949.10. These contracts required Emerald to, *inter alia*, remove, replace, and repair existing roofs on military housing.

Each of these contracts contained a provision that incorporated the Davis–Bacon Act wage rate clause, codified as 40 U.S.C. § 276a(a) (1988), which stated that:

[a]ll laborers and mechanics ... will be paid unconditionally ... the full amount of wages and bona fide fringe benefits (or cash equivalent) thereof due at time of payment computed at *rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part [of the contract]* ....

(Emphasis added). The above-mentioned Wage Determination, *i.e.*, schedule of job titles, job descriptions, wages, and fringe benefits, was prepared by the Department of Labor and was part of the contract. It stated hourly rates and fringe benefits for ninety separate categories of workers including, *inter alia*, the following:

|  | Basic Hourly Rates | Fringe Benefits |
|---|---|---|
| ROOFERS | $16.95 | $ 5.05 |
| LABORERS | | |
| Group 1 | 13.75 | 4.50 |
| Group 2 | 12.75 | 4.50 |
| Group 3 | 14.75 | 4.50 |
| Group 4 | 14.25 | 4.50 |
| Group 5 | 13.25 | 4.50 |
| Group 6 | 7.00 | 2.75 |

The Wage Determination did not describe the job responsibilities of *roofers,* but classified *laborers* according to their responsibilities. At the time these contracts were executed, an area practice governing the performance of the contracts required that *all* employees who worked on roofs as part of a roofing contract be classified as Roofers. *See Building & Construction Trades' Dept., AFL–CIO v. Donovan,* 712 F.2d 611, 614 (D.C.Cir.1983) (in order to comply with the Davis–Bacon provisions of a contract, workers must be classified according to the classifications used in the locality in which the contract is performed). Both parties have stipulated that neither was aware of this area practice at the time the contracts were executed.

Prior to the time of contracting, Emerald's project manager, Billie J. Noles, had estimated the labor and materials for the bids. In doing so, Noles referred to the 1984 *Means Repair and Remodeling Guide.* The "Forward" of this text described local union restrictions as factors which affect cost. However, Noles did not consult any area unions with regard to their practices.

On May 19, 1986, Labor began an investigation of alleged Davis–Bacon Act viola-tions by an Emerald subcontractor under an unrelated contract. Labor also began an investigation for similar violations under the subject contracts. By a letter dated September 10, 1986, the contracting officer notified Emerald of the area practice of classifying and paying all employees who worked on roofs as Roofers and requested that it make restitution payments for underpaid employees within thirty days, provide evidence of such payments, and properly classify each employee for the remainder of the contracts. The requested corrective action was never taken. Subsequently, the contracting officer withheld a total of $110,104 under the "Withholding of Funds" provision of the contracts,[1] and paid this money directly to workers who had been incorrectly paid according to the various rates for laborers.

Emerald then submitted a claim to the contracting officer · for payment of the withheld money. The contracting officer denied the claim. Emerald appealed to the Board, its complaint containing four claims (or counts). Count I alleged that the Wage Determination amounted to a defective specification; count II, that the government had misrepresented the rate at which "laborers" performing roofing work could be paid; count III, that the government had superior knowledge as to the proper classification of workers; and count IV, that a mutual mistake was made with regard to the existence of the area practice.

On motion by the government, the Board, on August 3, 1988, dismissed counts I and II for lack of subject matter jurisdiction. It denied that part of the government's motion to dismiss counts III and IV because it concluded that they focused on the contracting officer's role in the contracts and pleaded matters which went to the rights and obligations of the parties. In its later decision of September 26, 1989, it determined that the superior knowledge count (III) had been abandoned because both parties had stipulated that neither of them was aware of the area practice at the

---

**1.** This provision allows the contracting officer to withhold "so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics ... the full amount of wages required by the contract."

time of contract. The Board then concluded, reviewing count IV, that a mutual mistake as to a basic assumption underlying the contracts did not exist. Emerald appealed.

## ISSUES

1. Whether the Board erred in concluding that it lacked jurisdiction over appellant's defective specification and misrepresentation claims.

2. Whether the Board erred in concluding that appellant's contracts with the government should not be reformed on the ground of mutual mistake.

## DISCUSSION

On appeal, our standard of review is set forth in 41 U.S.C. § 609(b) (1988), as follows:

> the decision of the [Board] on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

Since both issues before us are questions of law, we are not limited in our review of the Board's decision.

Appellant argues that the Board erred in its decision concerning counts I, II, and IV, but does not argue error regarding count III. We thus consider count III to have been abandoned, as did the Board.

### A. Counts I and II—Defective Specification and Misrepresentation

■ In its treatment of counts I and II, dealing with defective specification and misrepresentation, respectively, the Board

determined that, in these counts, Emerald was contesting the adequacy of the job descriptions, which is an attack on the contents of the Wage Determination. It concluded that, since the Wage Determination was prepared by Labor, and the Disputes Concerning Labor Standards provision of the contracts [2] limited the resolution of labor disputes to Labor, the contracting agency was not responsible for the determination's content and the Board did not have jurisdiction over these counts.

Appellant argues, *inter alia*, that the Disputes provision does not create an exception to the Contract Disputes Act, which, it says, gives the Board jurisdiction to decide the present dispute, and that the Board's interpretation of the Disputes provision is contrary to that act. We do not agree.

The Disputes provision of the contracts clearly provides that disputes arising out of the labor standards provisions of the contracts are not to be subject to the Contract Disputes Act, but are to be resolved "in accordance with the procedures of the Department of Labor" (which clearly means *by* the department). The question then arises whether the particular problem before us "aris[es] out of" the labor standards provisions.

The facts in this case closely parallel those in *Collins Intern. Service Co. v. United States*, 744 F.2d 812 (Fed.Cir.1984). In *Collins*, the wage disputes clause in the contract between the government and the contractor "require[d] the contracting officer, in the case of a dispute over [the] classification [of workers], to 'submit the question together with his recommendation, to the * * * Department of Labor * * * for final determination.'" The court stated that "[t]he contract ... [wa]s clear

**2.** The "Disputes Concerning Labor Standards" provision states that:

> [d]isputes arising out of the *labor standards provisions of this contract* shall not be subject to the general Disputes Clause of this contract [*i.e.,* the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–13 (1988), as provided for in Provision 43 of the contract]. Such disputes shall be resolved in accordance with the pro-

> cedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

(Emphasis added).

that Labor has final authority to settle wage disputes...." *Id.* at 815.

The dispute here also concerns the contracts' wage determinations and their application. However Emerald chooses to style its complaint, whether as a defective specification or a misrepresentation, the essence of its complaint relates to the wage rate it had to pay all workers doing roofing work, and the listing of job categories and wage rates in the contracts is surely one of the labor standards provisions. The dispute here thus "aris[es] out of" the labor standards provisions of the contracts, and the Disputes provisions require that it be resolved by Labor.

The Contract Disputes Act is not to the contrary. This act "applies to any express or implied contract [other than a Maritime Contract] ... entered into by an executive agency for—[*inter alia*] the procurement of construction, alteration, repair or maintenance of real property." 41 U.S.C. § 602(a)(3) (1988). Section 8(d) of the Act, 41 U.S.C. § 607(d) (1988), gives the agency boards of contract appeals jurisdiction "to decide any appeal from a decision of a contracting officer (1) relative to a contract made by its agency...." However, in the specific Disputes provision of the contracts, appellant agreed that disputes over labor standards are *not* to be subject to the general disputes clause. While Emerald may have had little choice in the matter due to the Davis–Bacon Act, there is little doubt that an objective reading of the contracts indicates that the parties intended that the specific Disputes provision, stating that disputes arising out of labor standards are not to be subject to the general disputes clause, but are to be resolved in accordance with the procedures of the Department of Labor, predominates over the general provision that the Board has jurisdiction to decide any appeal from a contracting officer. It is well established that the specific governs over the general, and the language of these provisions compels the result.

We therefore conclude that the Board did not err in deciding that counts I and II arose out of the labor standards provisions of the contracts and as such were not subject to the Board's jurisdiction.

## B. Count IV—Mutual Mistake

■ Appellant asserted to the Board that the mutual lack of awareness of the local area practice of classifying the subject workers as Roofers was a mistake that was made by both parties. The Board determined that appellant did not consider the area practice to be relevant to the contracts because it was a non-union company and that appellant's knowledge of it would not have affected its bid price. The Board concluded that the mistake on the part of the contractor was more a mistake of law than of fact, and decided that there was no mutual mistake as to a basic assumption necessary for granting reformation.

Appellant argues to this court that it is entitled to relief for mutual mistake. Specifically, it asserts that both parties mistakenly believed that Emerald could pay laborer wages to some workers under the contract, that that mistake was a basic assumption underlying the contract, and that the mistake materially affected the contract price.

Appellant also asserts that the contracts do not expressly allocate the risk of mistake and that Emerald did not assume it. Its position is that both parties were unaware of the area practice and believed they knew the facts regarding the correct wage rates. Allocation of the risk of mistake to Emerald would give the government a windfall it neither sought, expected, nor is entitled to, according to Emerald.

■ We do not agree. The purpose of reforming a contract on the basis of mutual mistake is to make a defective writing conform to the agreement of the parties upon which there was a meeting of the minds. *American President Lines, Ltd. v. United States*, 821 F.2d 1571, 1582 (Fed.Cir.1987). "[A] mutual mistake as to a fact or factor, even a material one, will not support relief if the contract puts the risk of such a mistake on the party asking reformation...." *Flippin Materials Co. v. United States*, 312 F.2d 408, 415 (Ct.Cl.1963).

Provision 45(a) of the contract states that:

> [t]he Contractor acknowledges that it has taken steps reasonably necessary to ascertain the nature and location of the work, and that it has *investigated and satisfied itself as to the general and local conditions which can affect the work or its cost* ... [a]ny *failure* of the Contractor to take the actions described and acknowledged in this paragraph *will not relieve the Contractor from responsibility* for estimating properly the difficulty and cost of successfully performing the work, or for proceeding to successfully perform the work without additional expense to the Government.

(Emphasis added).

The contractor, by the above provision, expressly contracted to inform itself and work on the basis of the Wage Determination as set forth by the Department of Labor. It acknowledged that it investigated and satisfied itself as to the local conditions, which include area practice in classifying workers, and which could affect the cost of performing under the contract. The language of Provision 45(a) of the contracts is very clear in providing that any failure of the contractor to take the actions described and acknowledged would not relieve it from responsibility for performing the work without additional expense to the government. The risk of loss was thus on Emerald and it should not be compensated for incurring added expenses resulting from assuming that risk. The government is not responsible for Emerald's inadequate investigation.[3]

---

**3.** The dissent states that there is no dispute as to the applicability of the local wage rates, and that the issue is which party is to bear the responsibility for the increased cost. It then cites cases and regulations assigning that risk to the government. There are two answers to that assertion. The first is that, as to counts I and II, the dispute still relates to the Wage Determination, and that dispute should have been raised with the Department of Labor. It was not. Moreover, Emerald contracted away any right not to be responsible for added costs when it agreed that any failure on its part to investigate the local conditions that affect the cost of the work would not relieve it of the obligation to perform the work without additional expense to the government. That waiver, which Emerald freely made, controls.

## CONCLUSION

We conclude that the Board did not err in dismissing counts I and II of appellant's complaint for lack of jurisdiction and in concluding that there was no mutual mistake on the part of the parties that justifies reformation of the contracts.

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent, for this change in the Davis–Bacon wage classification terms of Emerald's two contracts, made by the government after the contracts were entered into and performed, is not at the risk and liability of the contractor.

The Board erred in holding that Emerald must bear the cost of the government's post-contract determination that all of the "laborers", in the six laborer classifications set in the contracts, must be reclassified and paid as "roofers".[1] It was a stipulated fact that neither the government nor the contractor knew of such an "area practice". During the procurement process the Army Engineers and Emerald each prepared labor cost estimates wherein demolition of the existing roofs and cleanup, for example, were done by laborers at the Davis–Bacon laborers' wage rates specified for demolition and cleanup work, not by roofers at the Davis–Bacon roofers' rates. The contracts were bid, accepted, entered into, and performed on this basis.

While Emerald does not and can not contest in this action the correctness of the Department of Labor's determination of area practice, requiring that the laborers'

---

**1.** The contracts between Emerald and the Army Engineers provide that the contractor will follow the Davis–Bacon general wage determination for Hawaii that is dated July 20, 1984 with specified modifications. This schedule, which is included in the contracts, shows wage rates for laborers in six defined categories of work, at pay ranging from $9.75 to $18.25 per hour (including fringe benefits); the schedule shows the roofers' rate of $22.00 per hour.

work in the Davis–Bacon schedule be paid at the roofers' rate, neither the contracts between Emerald and the agency, nor operation of law, absolves the agency of liability for the increased wages it retroactively required the contractor to pay. On the contractor's legal theories of mutual mistake, defective specification, or misrepresentation, the contractor is entitled to relief.

## I

By dismissing Counts I and II, the Board deprived the contractor of the opportunity to support two legal theories of recovery: the theories of defective specification and misrepresentation. While the first decision of the Board, dated August 3, 1988, responding to the government's motion to dismiss, appears to have limited the dismissal to those aspects of Counts I and II that could be interpreted as challenging the correctness of the Department of Labor's Davis–Bacon reclassification, the Board in its second decision, dated September 26, 1989, treated the dismissal as removing from consideration the merits of Emerald's arguments of defective specification and misrepresentation. This was error, procedural and substantive.

Emerald does not challenge the correctness of the Department of Labor's determination in September 1986 that all workers on these two contracts who had been classified and paid as laborers must be retroactively[2] reclassified and paid as roofers. However, whether or not there was a "Dispute Concerning Labor Standards" between Emerald and the Department of Labor, see 29 C.F.R. Parts 5, 6, and 7 (applying the Davis–Bacon Act, 40 U.S.C. §§ 276a et seq.), that issue is unrelated to the dispute between Emerald and the contracting agency concerning liability for increased costs of performance due to the change by the government in the contracts' wage and classification terms. This dispute is subject to the contracts' "Disputes Clause", and is decided under the Contract Disputes Act, 41 U.S.C. §§ 601 et seq. The Board's own precedent is clear. E.g., Ralph Construction, Inc., ASBCA No. 35633, 88–2 BCA ¶ 20,731, reaffirmed 88–3 BCA ¶ 21,136:

> The dispute here is not whether the Department of Labor has properly classified a class of employees employed in the performance of the contract or the prevailing minimum wage rates.
>
> *        *        *        *        *        *
>
> Rather, the dispute concerns who is to bear the burden of increased wages and fringe benefits. This is a matter properly before this Board for resolution.

Id. at 104,756 (holding the government responsible for the contractor's increased costs when the government issued a wage determination that was defective because it omitted one class of employee).

In Count I Emerald raised the legal theory that the wage classification specification in the solicitation and in the contracts was defective, for it was prejudicially different from the specification that was determined and imposed after the contracts were performed.[3] In Count II Emerald raised the legal theory that the erroneous wage classification specification in the contracts should be viewed as a misrepresentation, for there is authority that whether or not such a misrepresentation was innocent, it is the responsibility of the agency that made it. E.g., Womack v. United States, 389

---

**2.** The –0131 contract was awarded to Emerald on September 16, 1985. Notice to Proceed was received on October 2, 1985; construction started on November 26, 1985, and was substantially complete on May 6, 1986. Work on the –0143 contract was substantially complete on September 19, 1986. An investigation (of an unrelated contract) was begun in the spring of 1986; and on September 10, 1986 the agency wrote to Emerald that there was an "area practice" that all persons working for a roofing contractor must be classified and paid as roofers.

**3.** For example, the contracts' job description in the Wage Determination for "laborers, Group 1" included operators of forklifts and trucks; the job description for "laborers, Group 2" included "clean-up ... demolition laborer ... kettlemen ..." Demolition and clean-up and truck driving were among the activities required in performance of the roofing contracts here at issue. The agency did not inform Emerald that these laborers should have been classified and paid as roofers, until after contract performance.

F.2d 793, 800, 182 Ct.Cl. 399 (1968). In *Poirier & McLane Corp. v. United States,* 120 F.Supp. 209, 128 Ct.Cl. 117 (1954), wherein an error in the wage rate specified in the contract was discovered while the contract was being performed, the Court of Claims described this as a "misrepresentation" of labor costs:

> There consequently was a misrepresentation by defendant, perhaps an innocent one, as to the prevailing wage rate for unskilled laborers, but one upon which plaintiff relied.

*Id.* at 214, 128 Ct.Cl. at 126. In *Poirier* the court granted relief on a theory of mutual mistake of fact.

These legal theories do not turn on the correctness of the Department of Labor's classifications, but on the placement of the burden of errors or changes in such classifications.[4] While a post-contract change in the Department of Labor's classification gave rise to this dispute, Emerald is not foreclosed from challenging the placement of liability for that change, in the forum established for such challenge. The panel majority is incorrect in holding that the issues raised in Counts I and II, defective specification and misrepresentation, are not subject to resolution under the Contract Disputes Act, for that is where the law places them. Thus I must dissent from the affirmance by this court of the dismissal of these counts.

## II

The Board did consider Emerald's legal theory of mutual mistake. In view of the stipulation of the Army Engineers and the contractor that they did not know of the "area practice" at the time the contracts were bid, and the Board's explicit finding that "the Department of Labor was unaware of the area practice", there is scant dispute that all concerned were mistaken in

their knowledge or understanding. Like Emerald's estimator, the Army Engineers' estimator (a civil engineer in the Cost Engineering Branch located in Hawaii) contemplated that workers would do demolition and cleanup at the stated laborers' rates, not at the roofers' rate. As previously noted, "laborers, Group 2" included "demolition laborer" and "cleanup". Such specific designations in roofing contracts can only mean demolition and cleanup related to the roof, for this was work that the contracts required. Emerald had paid these laborers at the Group 2 wage, as the contracts required. Both parties to the contracts expected, it is undisputed, that application of the schedule in the contracts would meet the requirements of the Davis–Bacon Act. Both parties were later found by the Department of Labor to have been in error. Mutual mistake was established.

The contracting agency, in this case the Army Engineers, is responsible for including the correct wage determinations and work descriptions in its bid solicitations and contracts. 29 C.F.R. § 1.6(a)(2)(b) and (f) (1989):

> § 1.6 **Use and effectiveness of wage determinations.**
>
> \*     \*     \*     \*     \*     \*
>
> (b) Contracting agencies are responsible for insuring that only the appropriate wage determination(s) are incorporated in bid solicitations and contract specifications and for designating specifically the work to which such wage determinations will apply. Any question regarding application of wage rate schedules shall be referred to the Administrator, who shall give foremost consideration to area practice in resolving the question.
>
> \*     \*     \*     \*     \*     \*
>
> (f) The Administrator may issue a wage determination after contract award

---

**4.** Following is Count II in its entirety:

> *COUNT II—MISREPRESENTATION*
>
> 37. The specification provided job descriptions of laborers attached to the Wage Determination.
>
> 38. Emerald relied upon these descriptions when it prepared its bid for the contract.

39. The Corps withheld monies from Emerald because it maintained that local area practice required payment of the workers, employed as laborers, at the rate for roofers.
40. Emerald is entitled to compensation based upon the misrepresentation by the Government of the job descriptions of laborers contained within the contract.

or after the beginning of construction if the agency has failed to incorporate a wage determination in a contract required to contain prevailing wage rates determined in accordance with the Davis–Bacon Act, or has used a wage determination which by its terms or the provisions of this part clearly does not apply to the contract. Further, the Administrator may issue a wage determination which shall be applicable to a contract after contract award or after the beginning of construction when it is found that the wrong wage determination has been incorporated in the contract because of an inaccurate description of the project or its location in the agency's request for the wage determination. Under any of the above circumstances, the agency shall either terminate and resolicit the contract with the valid wage determination, or incorporate the valid wage determination retroactive to the beginning of construction through supplemental agreement or through change order, *Provided* That the contractor is compensated for any increases in wages resulting from such change. The method of incorporation of the valid wage determination, and adjustment in contract price, where appropriate, should be in accordance with applicable procurement law.

This assigned responsibility is a determining factor in Emerald's claim, for it is specific to the issue in dispute.

Although the government argues that Emerald must be held to bear the risk of the agency's error in wage rates and classification, none of the criteria for assumption of such risk was here shown. *See* Restatement (Second) of Contracts § 154 (1981). This issue was removed by the parties' stipulation that both sides were unaware of the "area practice" later found by the Department of Labor; both parties believed they knew the facts, and there was no basis for a finding of either conscious ignorance or a recognition that a vital fact was unknown and required further investigation.

The panel majority relies on the contract clause entitled "Site Investigation and Conditions Affecting the Work" in holding Emerald solely responsible for the consequences of the error in determining the "area practices". This clause states:

### 45. SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK

(a) The Contractor acknowledges that it has taken steps reasonably necessary to ascertain the nature and location of the work, and that it has investigated and satisfied itself as to the general and local conditions which can affect the work or its cost, including but not limited to (1) conditions bearing upon transportation, disposal, handling, and storage of materials; (2) the availability of labor, water, electric power, and roads; (3) uncertainties of weather, river stages, tides, or similar physical conditions at the site; (4) the conformation and conditions of the ground; and (5) the character of equipment and facilities needed preliminary to and during work performance. The Contractor also acknowledges that it has satisfied itself as to the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work done by the Government, as well as from the drawings and specifications made a part of this contract. Any failure of the Contractor to take the actions described and acknowledged in this paragraph will not relieve the Contractor from responsibility for estimating properly the difficulty and cost of successfully performing the work, or for proceeding to successfully perform the work without additional expense to the Government.

This clause is specific as to certain site conditions, and states the consequences of failure to reasonably investigate the site. There is no mention of wage classifications. The stipulated fact that both the contractor and the agency did not know of and did not adopt the "area practice" weighs against a holding that the contractor did not act reasonably, even were the Site Investigation clause to apply. However, it is the agency

that is "responsible for insuring" the correctness of the wage determinations. 29 C.F.R. § 1.6(a)(2)(b).

To cure its failure in this responsibility, the government unilaterally changed the contract terms. This change was totally outside the control of the contractor. The law that applies in this situation is settled. *E.g., Black, Raber-Kief & Assoc. v. United States,* 357 F.2d 355, 174 Ct.Cl. 302 (1966);

> It is settled that, where the Government requires a contractor to pay higher wages than he was obligated to do under his contract, the United States is liable for the additional costs.

*Id.* at 361, 174 Ct.Cl. at 312.

To hold otherwise is to bestow on the government a benefit unintended by the parties to the contract. *See, e.g., Southwest Welding & Mfg. Co. v. United States,* 373 F.2d 982, 179 Ct.Cl. 39 (1967) (reforming contract for mutual mistake, despite error on both sides, thus avoiding unintended enrichment of the government at the expense of the contractor); *Walsh v. United States,* 102 F.Supp. 589, 591, 121 Ct.Cl. 546, 554 (1952) (because of mutual ignorance of a rate change that had been made shortly before the contract was signed, the contractor could recover the increased wage costs although it was a fixed price contract); *Poirier & McLane,* 120 F.Supp. at 214, 128 Ct.Cl. at 127 (government responsible for increased cost where both parties were unaware of the correct wage rate, and intended that the correct rate be paid); *Sunswick Corp. v. United States,* 75 F.Supp. 221, 109 Ct.Cl. 772, *cert. denied,* 334 U.S. 827, 68 S.Ct. 1337, 92 L.Ed. 1755 (1948) (where Wage Adjustment Board defined substantially all carpentry work as waterfront work, United States must reimburse contractor for increased labor costs).

The cases cited by the government are less apt on their facts. In *Anthony Grace & Sons v. United States,* 433 F.2d 766, 768–69, 193 Ct.Cl. 248, 252–56 (1970) the court held that the contractor had inadequately investigated a glaring ambiguity in the wage rate determination and had a duty to investigate and inquire, and thus must bear the cost of the correct rate. In *Collins Int'l Serv. Co. v. United States,* 744 F.2d 812 (Fed.Cir.1984) the contractor recognized discrepancies in the worker classifications during the bid phase, and when the government refused to clarify the discrepancies the contractor made a "best guess" that turned out to be wrong; the court held that the contractor took that risk. Unlike *Anthony Grace* or *Collins,* here there were no ambiguities in the wage classification, no failure of Emerald to conduct a reasonable inquiry, no difference in understanding or knowledge between the contractor and the contracting agency.

The Board suggested that Emerald's failure to consider that this union's rates established the area practice was "more a mistake of law than of fact". However, the record shows no requirement, as a matter of law, that a contractor must adopt union wage and classification practices that were not uniformly followed in the area,[5] in order to do business with the government. If that were indeed a legal requirement for roofing contracts in Hawaii, the withholding of this information from both the government agency and the contractor is itself grounds for relief.

It is undisputed that until the agency's letter to Emerald of September 10, 1986, the wage classifications in the contracts were not changed to place all labor in the "roofer" classification, instead of among the six "laborer" classifications which were directed to the specific jobs to be performed. This later-imposed "area practice" made meaningless the contracts' Davis–Bacon definitions and categories. The Board's placing on Emerald of the burden of this retroactive change by the government is unsupported in fact and law. Thus, respectfully, I dissent.

---

**5.** The Board found that six other contractors with contracts with this same agency did not follow this "area practice".