**BURNSIDE–OTT AVIATION TRAINING CENTER, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 92–5034.

United States Court of Appeals,
Federal Circuit.

Feb. 17, 1993.

Harvey G. Sherzer, Howrey & Simon, Washington, DC, argued for plaintiff-appellant.

Deborah A. Bynum, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Sharon Y. Eubanks, Asst. Director.

Before RICH, MICHEL, and RADER, Circuit Judges.

MICHEL, Circuit Judge.

Burnside–Ott Aviation Training Center, Inc. (Burnside–Ott) brought suit in the United States Claims Court (now the United States Court of Federal Claims) under the Contract Disputes Act of 1978 (CDA) claiming entitlement to additional compensation for services performed under a contract with the Navy as a result of having to reclassify its technician employees to the higher paid classification of aircraft workers. Burnside–Ott claimed entitlement under five alternative theories: the Price Adjustment Clause (Count I), the Changes Clause (Count II), breach of contract (Count III), equitable estoppel (Count IV), and mutual mistake (Count V).

The Claims Court dismissed Counts I–III for lack of jurisdiction, holding that the claims arose exclusively out of the labor standards provisions of the contract which require resolution of any disputes by the Department of Labor (DOL). *Burnside–Ott Aviation Training Ctr. v. United States,* 24 Cl.Ct. 553, 561, 562, 563 (1991). Because Counts I–III do not arise exclusively out of the labor standard provisions of the contract, we reverse as to those counts. Moreover, that portion of the Claims Court's decision that, despite the court having found no jurisdiction, nevertheless discussed and decided the merits of Counts I–III, is vacated.

The Claims Court granted summary judgment in favor of the United States on Counts IV and V, concluding that Burnside–Ott could not create a genuine issue of material fact on any issue that would entitle it to prevail because the claims were

barred as a matter of law. *Id.* at 565, 569. Because Burnside–Ott's equitable estoppel and mutual mistake claims were not barred as a matter of law and because Burnside–Ott was not given an adequate opportunity to discover evidence which might have shown a genuine issue of material fact with respect to those counts, we vacate as to Counts IV and V. The case is remanded for further proceedings in accordance with this opinion.

## I. BACKGROUND

### A. Facts Leading to Suit

In 1981, the Navy contracted (Contract I) with Burnside–Ott for helicopter maintenance services at Whiting Field Naval Air Station, Florida. Wage Determination 81–77 (WD 81–77),[1] issued by the DOL under the Service Contract Act of 1965, 41 U.S.C. § 351 et seq. (1988), was incorporated into the contract. Under WD 81–77, aircraft workers were paid at a higher rate than technicians. Burnside–Ott employed both aircraft workers and technicians to perform the contract. When the DOL increased the minimum wage set forth in WD 81–77, the contract was amended to incorporate the minimum wage increase, and the Navy reimbursed Burnside–Ott for its increase in wage costs.

In 1984, the Navy contracted (Contract II) with Dynalectron Corp. for the same services at Whiting. This contract incorporated the latest WD 81–77 (Rev. 5), which included wage classifications for both aircraft workers and technicians.

Later in 1984, in anticipation of entering into a third contract for the same services, the Navy submitted to the DOL a "Notice of Intention to Make a Service Contract" ("Form 98–A" or "SP 98"). In that form, the Navy was required to list the type of labor classifications that it believed would be necessary to perform the contract. The Navy did not include technicians on the list. 24 Cl.Ct. at 555.

---

1. "A wage determination specifies the minimum wage a contractor must pay different classes of service employees, and reflects the prevailing rates for those classes in a particular location." 24 Cl.Ct. at 554 n. 2.

In 1985, the Navy again contracted (Contract III) with Burnside–Ott for the same maintenance services at Whiting. This contract also incorporated the latest WD 81–77 (Rev. 6), which included wage classifications for both aircraft workers and technicians. Shortly after Burnside–Ott began performance of the contract, technicians employed by Burnside–Ott filed a complaint with the DOL challenging their classification as technicians. At the request of the DOL after its investigation and upon prompting by the Navy, Burnside–Ott submitted a conformance request to the DOL.[2]

Before the DOL issued its ruling on the conformance request, the NAVY submitted another Form 98–A to the DOL in preparing to award the first option year of Contract III. In that form, the Navy again did not include a classification for technicians. On October 1, 1986, the DOL issued new wage determinations, WD 81–1143 and WD 85–1248, which increased the wages for all classifications of employees and did not include a labor classification for technicians. These new wage determinations replaced WD 81–77 (Rev. 6) and were incorporated into Contract III (Modification 20). Modification 20 became effective at the start of the first option year of Contract III, *i.e.*, on October 1, 1986.

On December 15, 1986, the DOL rejected Burnside–Ott's conformance request and ordered Burnside–Ott to reclassify its technicians as higher paid aircraft workers for the base year of the contract. On May 28, 1987, the Navy submitted a request for review and reconsideration of the DOL's December 15, 1986 ruling. The Wage and Hour Division of the DOL denied the petition. On February 5, 1988, Burnside–Ott petitioned for a formal review of the Wage

and Hour Division's ruling. On January 10, 1989, the Deputy Secretary of Labor upheld the prior DOL decisions, relying in part on the Form 98–A submitted by the Navy.

Upon receiving the DOL's final decision, Burnside–Ott paid the employees that it had hired as technicians the higher rate required for aircraft workers. Because of the DOL ruling and Modification 20, Burnside–Ott paid a correspondingly higher rate both for the base year of the contract and for the first option year of the contract. On August 23, 1989, Burnside–Ott submitted a claim to the contracting officer for an equitable adjustment, seeking reimbursement for its increased costs. The contracting officer denied the claim on November 9, 1989. On October 25, 1990,[3] Burnside–Ott filed suit in the United States Claims Court seeking damages in the amount of $3,166,691.61 under the CDA.

## B. Proceedings Before the Claims Court

In the Claims Court, Burnside–Ott based its claim for relief on five alternative bases: (1) the Price Adjustment Clause of the contract, which provides that the contractor is entitled to a price adjustment for all increased wage costs resulting from an increased wage determination (Count I), (2) the Changes Clause of the contract, which provides for an equitable adjustment to compensate for a change in the services to be performed (Count II), (3) breach of contract based on the Changes Clause of the contract because the change under the contract allegedly so fundamentally altered the undertakings of the parties that it constituted a breach (Count III), (4) equitable estoppel based on the Navy's conduct, ver-

---

**2.** A conformance request is a document prepared by a contractor proposing how its employee's wages and classifications should be adjusted when the wage determination included in a contract omits one or more classifications of service employees that the contractor intends to employ under the contract, or when the employee's actual duties or skills do not fit within one of the listed classifications.... The contracting officer attaches the contracting agency's recommendations to the conformance request and forwards it to the Wage and Hour Division of the [DOL]. The

Administrator of the Wage and Hour Division of the [DOL] makes a final determination of which employee classifications and wages are appropriate and approves, modifies, or rejects the requested classifications and rates.
*Id.* at 555 n. 3.

**3.** The CDA requires that suits in the Claims Court be brought within twelve months from the date the contractor receives the contracting officer's final decision. 41 U.S.C. § 609(a)(3) (1988).

bal representations of support, and acquiescence by silence over the course of three separate contracts, by which the Navy encouraged Burnside–Ott's classification of its employees as technicians (Count IV), and (5) mutual mistake because at the time of contracting both parties believed that technicians were properly employed under the contract (Count V).

On April 12, 1991, prior to the initiation of discovery by either party, the United States filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. The government attached documents in support of its motion, and apparently in anticipation of the court's treatment of the motion as a motion for summary judgment under RUSCC 12(b), the government noted its objection to such treatment on the jurisdictional question. On May 13, 1991, Burnside–Ott filed its Opposition to the Defendant's Motion to Dismiss, in which it also specifically objected to the conversion of the government's motion to dismiss into a motion for summary judgment. The Claims Court conducted a teleconference on June 4, 1991, in which it informed the parties that it would treat the government's motion to dismiss as a motion for summary judgment.

On June 4, 1991, the Claims Court issued an order allowing Burnside–Ott 30 days from the date of the order "to conduct discovery limited to that which is necessary to respond to defendant's motion for summary judgment." The Claims Court ordered Burnside–Ott to file "[o]n or before July 5, 1991 ... a supplemental response addressing those issues not briefed fully in its original May 13, 1991 response." On June 11, 1991, Burnside–Ott served a Request for Admissions, Interrogatories, a Request for Production of Documents, and a Notice of Deposition on the government.

On June 17, 1991, the government filed a motion for reconsideration of the Claims Court's June 4, 1991 order. In it, the government noted that under the normal rules of the Claims Court it should have 30 days in which to respond to Burnside–Ott's discovery request and that unless the court

extended the July 5, 1991 date that it had set for Burnside–Ott's supplemental response, Burnside–Ott's supplemental response would be due before Burnside–Ott had an opportunity to review the government's responses to its discovery requests. In response, on June 24, 1991, the Claims Court issued an order allowing the government until June 28, 1991 to respond to discovery and extending the date that Burnside–Ott's supplemental response was due to July 12, 1992. The court stated:

> The court's purpose in granting a 30 day discovery period was to give plaintiff a *limited opportunity* to gather information in order to file its supplemental brief. The court envisioned accomplishing this goal in a *very brief period,* and specifically did not want this *brief opportunity* to turn into a protracted process.

By letter dated June 27, 1991, the government informed Burnside–Ott that it objected to several deposition notices on the basis of the deliberative process privilege. The following day, Burnside–Ott filed a motion to compel. On July 1, 1991, the Claims Court ruled on the motion, and on July 2, 3, and 8, and August 2 and 6, 1991, certain depositions were held.

On July 12, 1991, Burnside–Ott filed its supplemental brief and simultaneously filed a Motion for Continuance requesting additional time to conduct discovery and suspend disposition of the case by summary judgment until Burnside–Ott was afforded an opportunity to conduct meaningful discovery on the issues relevant to summary judgment. The court granted Burnside–Ott until August 6, 1991 to complete discovery and until August 8, 1991 to file a further supplemental response. By the end of this additional discovery period, the government had not yet identified all of the persons Burnside–Ott had inquired about. In particular, in its deposition notice, Burnside–Ott requested that the government designate the individual or individuals

> having the most complete and detailed information with respect to ... the incorporation of wage determinations, wage rates and classification of employees under [Request for Proposal (RFP)] III, or

under Contract III as originally awarded. Government representative(s) so designated should have participated in drafting the SF–98 which related to RFP III. The government failed to identify such persons by the close of discovery on August 6, 1991. Burnside–Ott noted this failure in its Motion for Continuance.

The court held oral argument on August 21, 1991, two days after the government timely filed its response to Burnside–Ott's supplemental brief. On November 27, 1991, the Claims Court issued an order dismissing Counts I–III for lack of jurisdiction and granting summary judgment· in favor of the government on Counts IV and V.[4]

### C. The Claims Court's Decision

With respect to Counts I–III, the Claims Court relied on *Emerald Maintenance, Inc. v. United States*, 925 F.2d 1425 (Fed. Cir.1991). In that case, the Federal Circuit considered the same contract clause which is involved in this case, the "Disputes Concerning Labor Standards" clause. That clause provides:

> Disputes arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 4.6, and 8.

The *Emerald Maintenance* court determined that this clause divests the Armed Services Board of Contract Appeals (Board) of jurisdiction over any dispute that arises out of the labor standard provisions of the contract. 925 F.2d at 1428. In affirming the Board's dismissal for lack of jurisdiction, the court stated:

> However Emerald chooses to style its complaint ... the essence of its complaint relates to the wage rate it had to pay all workers doing roofing work, and the listing of job categories and wage rates in the contracts is surely one of the

labor standards provisions. The dispute here thus "aris[es] out of" the labor standards provisions of the contracts, and the Disputes provisions require that it be resolved by Labor.

*Id.* at 1429.

Relying on *Emerald Maintenance*, the Claims Court in this case stated that "disputes arising out of the labor standards provisions of a contract ... 'are not ... subject to the Contract Disputes Act,'" and must be resolved by the DOL. 24 Cl.Ct. at 557 (quoting *Emerald Maintenance*, 88–3 BCA ¶ 21,103 at 106,532, 1988 WL 97169 (1988), *aff'd*, 925 F.2d 1425). Disputes arise out of the labor standards provisions of the contract "when issues within exclusive Department of Labor jurisdiction form the entire factual predicate" of the claim. *Id.* The court stated that it does have "jurisdiction when a 'dispute centers on the parties' mutual contract rights and obligations, ... even though matters reserved to and decided exclusively by the Department of Labor are part of the factual predicate.'" *Id.* (quoting *Emerald Maintenance*, 88–3 BCA ¶ 21,103 at 106,532). The court concluded: "Thus, to determine whether it has subject matter jurisdiction to entertain this suit, the court must address Burnside–Ott's claims to determine whether they exclusively arise 'out of the labor standards provisions,' or whether the labor dispute is only part of the factual predicate." *Id.* 24 Cl.Ct. at 557–58 (citing *Emerald Maintenance*, 925 F.2d at 1428).

As to Count I, the court concluded that "[t]his case is factually similar to *Emerald Maintenance.*" *Id.* 24 Cl.Ct. at 560. "Here, as in *Emerald*, the matters reserved to and decided exclusively by the Department of Labor were not merely a part of the factual predicate, but rather formed the entire basis for Count I in Burnside–Ott's complaint." *Id.* at 561. The court added:

> Although Burnside–Ott attempted to craft its complaint so that the complaint

---

**4.** The Claims Court had issued an earlier order dated October 25, 1991, but that order was vacated in response to Burnside–Ott's motion to reconsider and to alter the judgment. Because the court's earlier order was vacated, we need not address the parties' arguments that are directed to it.

did not appear to challenge the Department of Labor's actions, the court cannot ignore the fact that Burnside–Ott brought this suit to recover the increased costs it incurred as a result of the Department of Labor's December 15, 1986 ruling. As such, plaintiff's claim under the Price Adjustment Clause arose exclusively out of the labor standards provisions of the contract and the court lacks subject matter jurisdiction.

*Id.*

Similarly, with respect to Count II, the court stated:

> While Count II was presented as a contract change claim under the general Changes Clause of the contract, in reality it was nothing more than another attack upon the labor standards provisions as in Count I. As such, this court lacks subject matter jurisdiction.

*Id.* at 562 (citation omitted). Finally, with respect to Count III, the court concluded: "Inasmuch as the reclassification arose out of the labor standards provisions of the contract this court does not have subject matter jurisdiction." *Id.* at 563.

Additionally, despite the Claims Court's ultimate conclusion that it did not have jurisdiction, the Claims Court made numerous statements that appear to have decided the merits of each of Counts I–III. The ruling on jurisdiction, however, precluded a thorough legal consideration of the merits of Counts I–III.

Turning to Count IV and the equitable estoppel claim, the Claims Court granted summary judgment in favor of the government concluding that *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), bars the application of equitable estoppel against the government for monetary claims as a matter of law. 24 Cl.Ct. at 564. As such, the court stated that even if Burnside–Ott were given an opportunity to discover facts to make out its claim of equitable estoppel, "Burnside–Ott could not in

these circumstances, create credible, colorable, or probative evidence raising genuine issues of material fact which would alter the outcome of its claim of equitable estoppel." *Id.* at 565–66.[5]

With respect to Count V, the Claims Court found that Burnside–Ott bore the risk of mistake and that the Navy's intentions when the contract was awarded were irrelevant to Burnside–Ott's mutual mistake theory. *Id.* at 567. The court held, therefore, that Burnside–Ott could not prevail on its mutual mistake claim. *Id.* The court stated that "[t]he actions of the Navy, and the opinions of several Navy contracting officials as to what Burnside–Ott could, or should, have classified its employees cannot, in these circumstances, create a genuine issue of material fact." *Id.* at 569.

■ Burnside–Ott appealed to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(3) (1988). "This court reviews Claims Court judgments to determine whether they are 'incorrect as a matter of law' or premised on 'clearly erroneous' factual determinations." *Whitney Benefits, Inc. v. United States,* 926 F.2d 1169, 1171 (Fed.Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 406, 116 L.Ed.2d 354 (1991) (quoting *Heisig v. United States,* 719 F.2d 1153, 1158 (Fed.Cir.1983)). "This court reviews a dismissal for lack of jurisdiction *de novo,* jurisdiction being a question of law." *Transamerica Ins. Corp. v. United States,* 973 F.2d 1572, 1576 (Fed.Cir.1992). Likewise, "[t]his Court reviews the propriety of a summary judgment decision *de novo.*" *Dehne v. United States,* 970 F.2d 890, 892 (Fed.Cir.1992) (*citing National Cable Television Ass'n v. American Cinema Editors, Inc.,* 937 F.2d 1572, 1576 (Fed.Cir. 1991)).

## II. ANALYSIS

### A. *Jurisdiction: Counts I–III*

■ Although *Emerald Maintenance* established the proper test for determining

---

5. The Claims Court also stated that it "more than likely lacks subject matter jurisdiction to entertain a claim for equitable estoppel against the United States for a money claim." 24 Cl.Ct. at 565. The court based that "conclusion" on its earlier finding that "Burnside–Ott failed to state a breach of contract claim or any right to recovery under the Price Adjustment Clause and the general Changes Clause." *Id.* at 564.

jurisdiction over claims such as these, the Claims Court erred in concluding that *Emerald Maintenance* is factually indistinguishable from Counts I–III in this case.

In *Emerald Maintenance,* the DOL issued a ruling stating that the contractor, Emerald Maintenance, had not properly classified its roofer employees and that it was required to pay those employees increased wages. The contractor did not challenge the DOL's ruling through the DOL's administrative process and did not pay its employees the increased wages. The contracting officer eventually withheld from the contractor the amounts necessary to pay the increased wages under a provision of the contract which allows the contracting officer to withhold "so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics ... the full amount of wages required by the contract." 925 F.2d at 1427 & n. 1. Emerald Maintenance then submitted a claim to the contracting officer for payment of the withheld money. The contracting officer denied the claim and Emerald Maintenance appealed to the Board.

Before the Board, Emerald Maintenance relied on three alternative legal theories to support its right to recovery: defective specification, misrepresentation, and mutual mistake. *Id.* at 1427. The Board dismissed for lack of jurisdiction with respect to the first two theories and ruled in favor of the government with respect to the mutual mistake theory. In affirming the Board's dismissal for lack of jurisdiction, the *Emerald Maintenance* court concluded that Emerald Maintenance's defective specification and misrepresentation claims were in reality challenges to the wage rate it was required to pay its roofers and the DOL's classification of those employees. *See* section I.C. *supra.*

In contrast, in the instant case, the contractor did challenge the DOL's December 15, 1986 ruling through the administrative process. And once it received the Secretary of Labor's final determination upholding the DOL's earlier ruling, the contractor paid its employees the increased wages as required by the DOL's ruling.

By asserting entitlement to an equitable adjustment under the Price Adjustment Clause and the Changes Clause of the contract, the contractor is not merely challenging the DOL's classification of its employees, or challenging the wage rate it had to pay its employees. After directly challenging the DOL's ruling, Burnside–Ott accepted the ruling and paid its employees. Rather, the contractor simply requests the Claims Court to determine the effect that the DOL's classification has on its contract rights. Such a determination requires the court to construe and apply the Price Adjustment Clause and the Changes Clause. The fact that "Burnside–Ott brought this suit to recover the increased costs it incurred as a result of the Department of Labor's December 15, 1986 ruling," 24 Cl. Ct. at 561, does not necessarily mean that Burnside–Ott's claim arose exclusively out of the labor standards provision of the contract. As the Claims Court stated: "[T]his court has jurisdiction when 'a dispute centers on the parties' mutual contract rights and obligations, ... even though matters reserved to and decided exclusively by the [DOL] are part of the factual predicate.'" *Id.* at 557 (quoting *Emerald Maintenance,* 88–3 BCA ¶ 21,103 at 106,532); *see also Aleman Food Servs. v. United States,* 25 Cl.Ct. 201, 208 (1992) (stating that the Claims Court has jurisdiction where resolution of dispute requires examination of contract provisions and the DOL's determinations form only part of the factual predicate). Because the DOL's ruling in this case forms only part of the factual predicate of Counts I–III, the Claims Court does have jurisdiction over them.

The Claims Court's conclusion that it did not have jurisdiction over Counts I–III precluded it from making any findings or conclusions on the merits of those counts, especially on an incomplete record without fair discovery opportunity. Accordingly, to the extent that the Claims Court considered and decided the merits of those counts, its

decision is vacated.[6] By vacating that portion of the opinion, however, we do not mean to imply or suggest that the Claims Court's decision on the merits was correct or incorrect. Rather, we are simply stating that any decisions or statements concerning the merits were premature.

## B. *Summary Judgment: Counts IV–V*

■ The Claims Court improperly relied on *Richmond* to conclude that Burnside–Ott's equitable estoppel claim is barred as a matter of law. In particular, the Claims Court erred in concluding that *Richmond* stands for the proposition that equitable estoppel will not lie against the government for any monetary claim. The *Richmond* holding is not so broad. *Richmond* is limited to "claim[s] for the payment of money from the Public Treasury *contrary to a statutory appropriation.*" 496 U.S. at 424, 110 S.Ct. at 2471 (emphasis added). Indeed, because the Supreme Court's analysis in *Richmond* is based entirely on the Appropriations Clause of the Constitution, Article 1, Section 9, Clause 7, which provides that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law," its holding must be limited to claims of entitlement contrary to statutory appropriations.

■ Burnside–Ott's assertion of a right to payment of money from the Public Treasury, however, is not based upon a statutory entitlement. Burnside–Ott's assertion is instead based upon its contract with the Navy. Nor does Burnside–Ott claim entitlement contrary to statutory eligibility criteria, as did Richmond. Thus, neither the holding nor analysis in *Richmond* is applicable in this case, and Burnside–Ott's equitable estoppel claim is not barred as a matter of law because of *Richmond*. Equitable estoppel may or may not apply in this case depending on facts yet to be established.

■ Likewise, Burnside–Ott's mutual mistake claim is not barred as a matter of

law. The Claims Court properly stated the law of mutual mistake:

> [W]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party *unless he bears the risk of mistake under the rule stated in* [Restatement (Second) of Contracts] § 154 [1981].

24 Cl.Ct. at 566 (quoting *National Rural Util. Coop. Fin. Corp. v. United States,* 14 Cl.Ct. 130, 141 (1988), *aff'd,* 867 F.2d 1393 (Fed.Cir.1989)). "A party bears the risk of mistake when the risk is allocated to him by agreement of the parties...." *Id.* (quoting Restatement (Second) of Contracts § 154 (1981)). The Claims Court erred in prematurely deciding which party bore the risk of mistake and in concluding that the parties' intentions are irrelevant to a determination of mutual mistake.

First, the Claims Court concluded that the Service Contract Act, as incorporated into Contract III, placed the risk of Burnside–Ott's increased labor costs on Burnside–Ott. *Id.* The Claims Court reached that conclusion by relying on the following provision of the Service Contract Act:

> (a) Every contract ... entered into by the United States ... the principal purpose of which is to furnish services in the United States through the use of service employees, shall contain the following:
>
>   (1) A provision specifying the minimum monetary wages to be paid the various classes of service employees in the performance of the contract or any subcontract thereunder, as determined by the Secretary [of Labor]....

41 U.S.C. § 351 (1988), in conjunction with the succeeding provision that places responsibility for any violation of that section on the "party responsible therefor." 41 U.S.C. § 352(a) (1988). Neither of these provisions, however, places the responsibility on Burnside–Ott for mistaken classification. At most, they make Burnside–Ott

---

**6.** Because the Claims Court's alternative "holding" that it lacked jurisdiction over Count IV was based upon its ruling on the merits of

Counts I–III, *see* n. 5 *supra,* that holding is also vacated.

severally or jointly liable if the contract it signs fails to contain the required clause. But neither section says anything about which party to a government contract bears the risk of misclassification of service employees. Therefore, further examination is needed to determine whether the parties had an agreement, explicitly reached or implied from customary practice, as to who should bear the risk of mistake,[7] and the Claims Court erred in concluding that it was Burnside–Ott.

■ Second, the Claims Court concluded that the Navy's intentions at the time the contract was awarded are irrelevant to Burnside–Ott's mutual mistake theory. The intent of the parties, however, is not irrelevant to the question of which party agreed to assume the risk of mistake and must be considered in making such a determination. *See Bowen–McLaughlin–York Co. v. United States,* 813 F.2d 1221, 1222 (Fed.Cir.1987); *National Presto Indus. v. United States,* 338 F.2d 99, 110, 167 Ct.Cl. 749 (1964), *cert. denied,* 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965). Because intent is relevant, the Claims Court erred in granting summary judgment on this issue without allowing adequate discovery. In other words, because of the trial court's error about intent, it cut short discovery. While this court encourages proper case management to avoid the expense of unnecessary discovery, the case demands adequate discovery.

■ "The Supreme Court has made clear that summary judgment is inappropriate unless a tribunal permits the parties adequate time for discovery." *Dunkin' Donuts of America v. Metallurgical Exoproducts Corp.,* 840 F.2d 917, 919 (Fed.Cir. 1988) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Indeed, summary judgment should "be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986).

The Claims Court did put Burnside–Ott on notice that it intended to treat the government's motion to dismiss as a motion for summary judgment. As such, Burnside–Ott was on notice that it had to come forward with all of its evidence. However, the time provided to Burnside–Ott in which it could conduct discovery in order to gather such evidence was so limited as to be inadequate under the circumstances of this case.

The total time Burnside–Ott was allowed for discovery on the motion for summary judgment was two months (June 4, 1991 to August 6, 1991). Much of that time was consumed by the various motions that each party filed to extend the court's original grant of 30 days for discovery and by the motion to compel that Burnside–Ott was forced to file in response to the government's objection to its deposition requests. The fact that the government had not even responded to all of Burnside–Ott's discovery requests within the allotted discovery period and that no time remained for Burnside–Ott to file a second motion to compel also shows that Burnside–Ott was provided an inadequate opportunity for discovery. Indeed, the witness that the government had not yet identified may possess relevant information with respect to both Burnside–Ott's equitable estoppel and mutual mistake claims. To date, the government has offered no excuse at all for failing to respond during the two-month discovery period. In any event, on remand the trial court will have an opportunity to permit full discovery of facts necessary to resolve this case. We note that the trial judge exercised commendable trial management in trying to eliminate unnecessary discovery. And based on his view of the law, broader discovery was indeed unnecessary. Having determined, however, that neither the equitable estoppel claim nor the mutual mistake claim is barred as a matter of law, further discovery must be allowed.

Because neither Burnside–Ott's equitable estoppel nor mutual mistake claims are barred as a matter of law and because

---

7. Neither the parties nor the Claims Court has brought to our attention any other provision of

the contract which would preclude such an agreement.

Burnside–Ott was not given an adequate opportunity for discovery, summary judgment was improperly granted on Counts IV and V on the present record.

### III. CONCLUSION

The Claims Court erred in concluding that it does not have jurisdiction over Counts I—III of Burnside–Ott's claim. Those counts do not require the Claims Court to revisit actions by the DOL, but instead require the Claims Court to determine the contractual consequences of the DOL's determinations. The Claims Court also erred in granting summary judgment on Counts IV and V. Neither of those counts on its face is barred as a matter of law and Burnside–Ott must be given an adequate opportunity to discover facts as to those counts before summary judgment or other disposition would be appropriate. Accordingly, we reverse as to Counts I–III, vacate as to Counts IV–V, and remand for further proceedings in accordance with this opinion. To the extent the Claims Court discussed and decided the merits of Counts I–III, its decision is vacated.

REVERSED–IN–PART, VACATED–IN–PART, and REMANDED.

### COSTS

Each party shall bear its own costs.