**REDDICK & SONS OF GOUVERNEUR, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 37–87C.**

United States Court of Federal Claims.

July 13, 1994.

Francis E. Maloney, Jr., Syracuse, NY, for plaintiff.

Donald E. Kinner, with whom were Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, Director, and Jeanne E. Davidson, Asst. Director, Washington, DC, for defendant.

## OPINION

ANDEWELT, Judge.

In this government contract action brought pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601–613, plaintiff, Reddick & Sons of Gouverneur, Inc., seeks to recover payments pursuant to a contract it entered with the United States Army Corps of Engineers for the construction of a recreation center at Fort Drum, Watertown, New York. Plaintiff claims (1) it is entitled to receive interest on certain payments defendant allegedly failed to make in a timely manner, (2) defendant improperly required plaintiff to pay plaintiff's employees at rates higher than those set forth in the contract, (3) it is entitled to recover liquidated damages assessed against it, and (4) defendant caused plaintiff to perform certain work outside of the contract. This action is presently before the court on cross-motions for summary judgment. For the reasons set forth below, defendant's motion for summary judgment is granted in part and plaintiff's cross-motion is granted in part.

## I.

Pursuant to Section 3902 of the Prompt Payment Act, 31 U.S.C. §§ 3901–3906, "an agency acquiring property or service from a business concern, who does not pay the concern for each complete delivered item of property or service by the required payment date, shall pay an interest penalty to the concern on the amount of the payment due." Pursuant to Section 3903, where a contract does not specify a payment date, the government is obliged to make payments "30 days after a proper invoice for the amount due is received." Herein, the contract did not specify payment dates and defendant delayed certain payments beyond 30 days after receiving the invoices from plaintiff. Plaintiff claims it is entitled to receive interest payments for these periods of delay.

Defendant responds that at the time of the contract, the regulations implementing the Prompt Payment Act did not provide for interest on such payments. Specifically, defendant relies upon OMB Circular A–125, ¶ 8(c), which states that "[i]nterests penalties are not required ... when payments are made solely for financing purposes." General Provision 7 of the instant contract obliged defendant to make periodic progress payments. Defendant argues that because it made these progress payments prior to completion of the contract, and because it based the amount of these payments on a distribution of the contract price over the term of the contract, these payments should be deemed to have been made solely for financing purposes.

The Prompt Payment Act was enacted in 1982 (the 1982 Act) and amended in 1988 (the 1988 Amendment). The 1988 Amendment expressly provides that the obligation in the 1982 Act to pay interest on delayed payments includes progress payments made in government construction contracts. 31 U.S.C. § 3903(a)(6). The 1988 Amendment, however, is prospective in effect and does not apply retroactively. Hence, plaintiff is entitled to interest herein under the Prompt Payment Act only if the 1988 Amendment's specific

reference to progress payments on construction contracts served to clarify rather than modify the 1982 Act.

The pertinent legislative history indicates that Congress intended the 1982 Act to include progress payments and the 1988 Amendment merely to clarify that point. The pertinent 1982 House Committee Report provides, in pertinent part:

> To the extent that contracts involving a series of partial payments or executions provide for separate payments, OMB's regulations shall specify separate dates when payment is due. This provision is intended to cover situations where the government and a business concern contract for separate payment for partial deliveries or executions; for example, progress payments.

H.R.Rep. No. 461, 97th Cong., 2nd Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 111, 124. The 1988 House Committee Report, complaining that OMB Circular A–125 had improperly failed to follow the terms of the 1982 Act and the intent of Congress, reiterates this point as follows:

> *Progress payments.*—Progress payments under construction contracts are payments for partial executions authorized by the contract (31 U.S.C. 3903(4)). They, therefore, fall squarely within the act's protections [as enacted in 1982]. The initial version of OMB's implementing circular (OMB Circular A–125), however, defined progress payments generally as financing payments, which the circular specifically excluded from coverage (paragraph 8(c)). Since the circular failed to distinguish progress payments for construction from other forms of progress payments, most agencies specified in their implementing regulations that construction progress payments were "payments ... made solely for financing purposes" and refused to pay late payment interest penalties on untimely construction progress payments.
>
> OMB recently issued a revised circular which states explicitly that progress payments under construction contracts are subject to the act. Despite this revision, construction industry witnesses testifying during the subcommittee hearing strongly support inclusion of construction contracts by specific reference in statute.

H.R.Rep. No. 784, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 3036, 3050 (footnotes omitted).

The provisions of the instant contract and the wording of the Prompt Payment Act similarly support the conclusion that the instant progress payments come within the scope of the 1982 Act. General Provision 7 of the contract is entitled "PAYMENTS TO CONTRACTORS" and its focus is not on providing payments to the contractor solely for financing purposes but rather on providing payments for work actually being performed and completed. General Provision 7(b) explains the tie between receipt of the progress payments and the performance of the contract work, as follows:

> The Government will make progress payments monthly *as the work proceeds,* or at more frequent intervals as determined by the Contracting Officer, on estimates approved by the Contracting Officer. If requested by the Contracting Officer, the Contractor shall furnish a breakdown of the total contract price showing the amount included therein for each principal category of the work, in such detail as requested, to provide a basis for determining progress payments.

(Emphasis added.) Thus, General Provision 7(b) envisions making progress payments "as the work proceeds" and corresponding the amounts of these payments generally to the amount of work performed.

General Provision 7(c), demonstrating a similar intent, provides, in pertinent part:

> In making such progress payments, there shall be retained 10 percent of the estimated amount until final completion and acceptance of the contract work. However, if the Contracting Officer finds that satisfactory *progress was achieved* during any period for which a progress payment is to be made, he may authorize such payment to be made in full without retention of a percentage.

(Emphasis added.) General Provision 7(c) thereby envisions making progress payments when "progress" is achieved on the contract work, not solely for financing purposes. Indeed, where the "progress ... achieved" is satisfactory, the ten percent need not be retained.

By allowing interest on a "complete delivered item of property or service," Section 3902 does not necessarily exclude progress payments made prior to completion of the entire construction project. General Provision 7(d) provides that "[a]ll material and work covered by progress payments made shall thereupon become the sole property of the Government." Thus, in exchange for its payment, the government receives ownership rights over the discrete work items completed during the course of construction. Hence, rather than merely involving financing, the progress payments serve as consideration for defendant receiving ownership rights over the completed contract work.

Summary judgment is warranted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Herein, on the issue of interest payments due, there is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law. As described above, the statute, the pertinent legislative history, and the terms of the contract all support plaintiff's argument that the instant progress payments come within the scope of the Prompt Payment Act. Therefore, defendant is liable to pay plaintiff the required interest on all payments delayed beyond the statutory time period.

## II.

### A.

The Davis–Bacon Act (the Act), 40 U.S.C. § 276a, requires federal contractors to pay laborers on federal government construction projects no less than the wages prevailing on similar local projects. The Act further empowers the Secretary of Labor to determine local wage rates and promulgate reasonable regulations. 40 U.S.C. § 276(c). General Provision 72 of the instant contract references the Act and obliged plaintiff to pay its employees "at rates not less than those contained in the wage determination of the Secretary of Labor which are attached hereto and made a part hereof." The parties dispute which wage determination "attached hereto" controls.

For purposes of determining prevailing wages on similar local projects, the instant contract states that it is a "BUILDING" construction contract and that the applicable Secretary of Labor wage decision establishing prevailing local wages for such construction is Wage Decision No. NY80–3054 (Decision 3054). Attached to the contract are the original Decision 3054, as published in the Federal Register on September 5, 1980, 45 Fed.Reg. 59,104 (1980), and "Modification Page 10" which contains the relevant portion of Modification No. 5 of Decision 3054, as published in the Federal Register on April 15, 1983, 48 Fed.Reg. 16,398 (1983).

The original Decision 3054, 45 Fed.Reg. 59,104, lists separately two sets of prevailing rates for carpenters, one for "BUILDING CONSTRUCTION" and the other for "HEAVY AND HIGHWAY CONSTRUCTION." With respect to building construction, Decision 3054 establishes the following prevailing rates for carpenters:

|  | Basic Hourly Rates | Health & Welfare | Pensions | Vacations | Education and/ or Apprentice Training |
| --- | --- | --- | --- | --- | --- |
| Carpenters: |  |  |  |  |  |
| Carpenters | 9.60 | .87 |  |  |  |
| Millwrights | 11.95 | .55 | .90 | Paid Holidays | .005 |

With respect to heavy and highway construction, Decision 3054 sets the following rates:

| | Basic Hourly Rates | Health & Welfare | Pensions | Vacations | Education and/ or Apprentice Training |
|---|---|---|---|---|---|
| Carpenters & Piledrivers | 11.23 | .55 | .90 | | .025 |

Modification No. 5 establishes the following rates:

| | Basic Hourly Rates | Fringe Benefits |
|---|---|---|
| Carpenters: | | |
| Carpenters | 14.02 | 1.755 + Paid Holidays |
| Millwrights | 14.27 | 1.755 + Paid Holidays |
| Heavy & Highway | 13.12 | 1.755 |

During the course of contract performance, plaintiff understood that it was obliged to pay the carpenter pay rate for "BUILDING" contracts as set forth in the original Decision 3054 (*e.g.*, $9.60 an hour basic rate plus benefits of $.87). Defendant, however, obliged plaintiff to pay the rate for carpenters set forth in Modification No. 5 (*e.g.*, $14.02 an hour and fringe benefits of $1.755 plus paid holidays). Plaintiff paid its carpenters at the rate defendant demanded but subsequently filed a claim with the contracting officer seeking a refund of the difference between the two rates. The contracting officer declined to make a decision on the ground that resolution of such a dispute was properly within the jurisdiction of the Department of Labor.

**B.**

Plaintiff's argument that it was not obliged to pay the carpenter rate established in Modification No. 5 rests on the absence in Modification No. 5 of any heading that specifies the type of contract to which the prevailing rates listed therein apply. Plaintiff contends that the absence of such a heading resulted in an ambiguity in that it was not clear that Modification No. 5 applied to building contracts. Because ambiguity is ordinarily interpreted against the drafter of the contract, *S.W. Aircraft, Inc. v. United States*, 213 Ct.Cl. 206, 213, 551 F.2d 1208, 1212 (1977), and defendant was the drafter herein, plaintiff argues that the prevailing rates listed in Modification No. 5 should not be interpreted to reach building contracts.

Defendant seeks dismissal of plaintiff's wage claim for lack of jurisdiction. Defendant's jurisdictional argument has its origin in General Provision 72 of the contract, which provides, in pertinent part: "Disputes arising out of the labor standards provision of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR Parts 5, 6, and 7." "Parts 5, 6, and 7" contain the procedures for resolution of disputes of fact or law concerning payment of prevailing pay rates, overtime pay, or proper classification, *see, e.g.*, 29 C.F.R. § 5.11, and provide that a contractor can secure a decision from the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, 29 C.F.R. § 5.2(b), and seek review of that decision at the Wage Appeals Board, 29 C.F.R. § 7.1(b). Parts 5, 6, and 7 do not provide any role in dispute resolution for the United States Court of Federal Claims. Defendant argues that because the instant dispute involves the proper payment to carpenters working on the contract project, the dispute necessarily arises out of the labor standards provision of the contract and hence, is properly within the jurisdiction of the Department of Labor and not this court.

*Emerald Maintenance, Inc. v. United States*, 925 F.2d 1425 (Fed.Cir.1991), involved a wage dispute and the same "Disputes Concerning Labor Standards" provision as here

involved. In *Emerald,* the applicable wage determination established different rates for roofers and laborers and the dispute involved which rate applied to certain of Emerald's workers. The Court of Appeals for the Federal Circuit concluded that such a dispute as to the proper classification of the workers arose out of the labor standards provision of the contract and therefore was within the jurisdiction of the Department of Labor and not this court.

The Federal Circuit subsequently clarified the reach of *Emerald* in *Burnside–Ott Aviation Training Center, Inc. v. United States,* 985 F.2d 1574 (Fed.Cir.1993). The court concluded, in effect, that the pertinent "Disputes Concerning Labor Standards" provision prevents the Court of Federal Claims from entertaining jurisdiction only where the claim arises "exclusively" out of the labor standards provision of the contract. The court explained, as follows:

> The fact that "Burnside–Ott brought this suit to recover the increased costs it incurred as a result of the Department of Labor's December 15, 1986 ruling," 24 Cl. Ct. [553, 561 (1991) ], does not necessarily mean that Burnside–Ott's claim arose exclusively out of the labor standards provision of the contract. As the Claims Court stated: "[T]his court has jurisdiction when 'a dispute centers on the parties' mutual contract rights and obligations, ... even though matters reserved to and decided exclusively by the [Department of Labor] are part of the factual predicate.' " *Id.* at 557 (quoting *Emerald Maintenance,* 88–3 BCA ¶ 21,103 at 106,532); *see also Aleman Food Servs. v. United States,* 25 Cl.Ct. 201, 208 (1992) (stating that the Claims Court has jurisdiction where resolution of dispute requires examination of contract provisions and the [Department of Labor's] determinations form only part of the factual predicate). Because the [Department of Labor's] ruling in this case forms only part of the factual predicate of Counts I–III, the Claims Court does have jurisdiction over them.

985 F.2d at 1580.

In one sense, the dispute herein can be argued to arise exclusively out of the labor standards provision of the instant contract because like *Emerald,* the dispute arises out of the classification and payment provisions established by the Department of Labor and incorporated into the contract. On the other hand, the instant case can be characterized as "center[ing] on the parties' mutual contract rights and obligations." *Burnside–Ott Aviation Training Center, Inc. v. United States,* 24 Cl.Ct. 553, 557 (1991). Unlike *Emerald,* the instant case does not involve an issue of classification of employees under a wage decision, an area uniquely within the expertise of and "reserved to and decided exclusively by" the Department of Labor. *Id.* The parties herein agree that plaintiff's workers were properly classified as carpenters on a building contract. Rather, the instant dispute arguably turns on an issue of contract interpretation. General Provision 72 of the contract required plaintiff to pay its workers "at a rate not less than those contained in the wage determination of the Secretary of Labor which [are] attached [to the contract]." The pertinent dispute herein arguably is not which wages the Department of Labor intended carpenters working on building contracts to be paid, but rather which wages the contract, as drafted, obliged plaintiff to pay. Such issues of contract interpretation lie within the expertise of the courts and Boards of Contract Appeals rather than the Department of Labor. In this setting, it can be argued that the dispute herein should not be characterized as one that arises exclusively under the labor standards provision of the contract.

This court, however, need not resolve this apparently novel issue. As explained below, even assuming this court has jurisdiction over the instant claim, plaintiff could not prevail on the merits of the claim · because contrary to plaintiff's contention, Modification No. 5 unambiguously applies to the instant contract and obliges plaintiff to pay its carpenters at the stated ·rates.

### C.

Modification No. 5 specifies that it modifies the rates set forth in Decision 3054, 45 Fed. Reg. 59,104 (1980). Decision 3054 separately lists prevailing rates for several types of

construction contracts, only two of which include carpenters—building construction contracts and heavy and highway construction contracts. For building construction contracts, Decision 3054 contains two listings under the heading "Carpenters"—"Carpenters" and "Millwrights." For heavy and highway construction, contracts, Decision 3054 lists only one type of carpenter. Thus, in total, Decision 3054 lists prevailing wages for three types of carpenters.

Modification No. 5 similarly sets prevailing rates for three distinct types of carpenters—"Carpenters," "Millwrights," and "Heavy and Highway." Even in the absence of any heading as to which type of contract it applies, Modification No. 5, when read together with the original Decision 3054, has only one reasonable interpretation. The three types of carpenters listed in Modification No. 5 necessarily refer to the same three types of carpenters listed in the original Decision 3054, i.e., the carpenters and millwrights listed for

building construction contracts in Decision 3054 correspond to the carpenters and millwrights listed in Modification No. 5, and the carpenters listed for heavy and highway construction contracts in Decision 3054 correspond to the heavy and highway carpenters listed in Modification No. 5. It certainly would not be reasonable to interpret Modification No. 5 as applying only to heavy and highway construction carpenters, because heavy and highway carpenters are only one of the three types of carpenters specifically listed in Modification No. 5.

The absence of a heading designating "building" contracts in Modification No. 5 is not significant for another reason. The instant contract specifically anticipates that wage rates set forth in Decision 3054 could apply to this contract even though they are not specifically designated under the heading of "building." The same page of the contract that categorizes the contract as a "building" contract states as follows:

THE FOLLOWING CLASSIFICATION(S) AND RATES SET FORTH IN WAGE DECISION NO. NY80–3054

APPLY TO THIS CONTRACT:

| X | THOSE SPECIFICALLY DESIGNATED "BUILDING" |
| --- | --- |
| | THOSE SPECIFICALLY DESIGNATED "HEAVY" |
| | THOSE SPECIFICALLY DESIGNATED "HIGHWAY" |
| | THOSE SPECIFICALLY DESIGNATED "COMMERCIAL" |
| | THOSE SPECIFICALLY DESIGNATED "RESIDENTIAL" |
| X | THOSE NOT SPECIFICALLY DESIGNATING ANY OF THE ABOVE CONSTRUCTION CATEGORIES. |

---

Hence, pursuant to specific contract terms, plaintiff was obliged to adhere to classifications and wage rates, such as the classification and wage rates listed in Modification No. 5, which do not specifically designate any particular construction category.

For all of the above reasons, the instant contract, in pertinent part, is unambiguous in that Modification No. 5 modifies original Decision 3054, *inter alia*, by increasing the prevailing rate for carpenters on building contracts. Hence, plaintiff was obliged to pay

its carpenters at the rate established for "Carpenters" in Modification No. 5. Defendant, therefore, is entitled to summary judgment on this issue.[1]

### III.

■ Plaintiff presents two additional claims for monetary payments. First, plaintiff seeks to recover liquidated damages that had been assessed against it. But plaintiff acknowledged at oral argument that it never filed a written claim requesting a decision from the contracting officer to recover such

---

1. Defendant did not move for summary judgment on this issue. The court raised the issue *sua*

*sponte* and provided plaintiff with an opportunity to respond.

funds. A written claim is a prerequisite to this court's jurisdiction. *See Dawco Constr., Inc. v. United States,* 930 F.2d 872 (Fed.Cir. 1991). Hence, plaintiff's claim to recover liquidated damages must be dismissed for lack of jurisdiction. Second, plaintiff's final claim relates to sidewalk repairs for which plaintiff paid. At oral argument, the parties were uncertain whether plaintiff had ever filed a written claim on this issue. If plaintiff has not filed a written claim, this claim too would be dismissed for lack of jurisdiction.

### Conclusion

For the reasons set forth above, (1) plaintiff is entitled to interest on all payments defendant delayed beyond the statutory time period, (2) defendant is entitled to summary judgment on the issue of the wage rate at which plaintiff was obliged to pay its employees, (3) plaintiff's claim for liquidated damages is dismissed for lack of jurisdiction, (4) on or before August 15, 1994, the parties shall file a stipulation as to the amount of interest due plaintiff in accordance with this decision, and (5) on or before July 29, 1994, plaintiff shall file a status report advising the court as to whether plaintiff ever filed a written claim on the issue of sidewalk repairs, and if so, identifying that claim.

IT IS SO ORDERED.